E. E. SAUNDERS, APPELLANT, VS. PROVISIONAL MUNICIPAL
ITY, OF PENSACOLA, APPELLEE.

1. When the language of an act granting powers is sufficient to give a
particular power and there is nothing in the other express pro-
visions or in the purpose of the act, clearly inconsistent with the
exercise of such particular power, it will be held to have passed
under the grant.

2. The grant to a Provisional Municipality under the legislation of
1885, (Chapters 3606, 3607,) of all the powers and authority,
rights and privileges, conferred upon cities and towns by the
general municipal incorporation act of 1869, (Chapter 1688,) and
the amendments thereto, includes the power to extend corporate
limits, as provided by the latter act.

3. The power mentioned is not excluded from the grant by the pre-
vious provisions of the same section that the boundaries of the
provisional municipalities shall be co-extensive with those of the
dissolved city or town, nor by any other express provision of the
acts of 1885, nor is it inconsistent with the purpose of the same.

4. Where there is an express amendment of a section of a statute with-
in the meaning of section 14, of Article IV, of the Constitution of
1868, the amendatory section takes the place of the section
amended, as a part of the original act.

5. Where the title of a statute is one to "amend" a former act, giving
the title and date of approval of the latter. and the title of such
amended act is sufficiently expressive of its "subject," the title
of the amendatory act is sufficient to cover an express amend-
ment made by one of its sections of an intermediate act ex-
pressly amending a section or sections of the original act.

6. The additional expression in the title of the third act of a purpose to
amend acts amendatory of the original act and to make further
provisions as to its general subject, is not a violation of such
constitutional provision, and does not impair the third act.

7. The incorporation in one section of an amendatory act of provisions
relating to matters within the general subject of the act amend-
ed, but as to which no provision is made by the section of which
such amendatory section takes the place, is not a violation of
such constitutional provision.

8. An error in an amendatory act in stating the day of the month on which a former amendatory act was approved, does not necessarily render inoperative the amendment made by the act in which such error has occurred.

9. Where the title of an act is "to amend" a former act, (giving its title and date of approval,) and "the act amendatory thereof and to further provide" as to the subject of the original act, and one of its sections enacts that the 29th section of the act mentioned in the title "as amended by the act approved March 8th, 1877, shall read as follows," there being in fact no act approved on said day in March amending such section, but one amending other sections of the same act having been approved on said day, and an act amending such section having been approved on the *second* day of the same month, the mistake in the date will not invalidate the amendment, but should be held to be merely clerical.

Appeal from the Circuit Court for Escambia county

Judge Finley, of the Fifth Circuit, sat in place of the Chief-Justice, who was disqualified.

The appellant applied to the Circuit Judge, by petition under the statute, to have declared not lawfully made the assessment for taxes by the Provisional Municipality of Pensacola, of certain real estate of petitioner, alleging that said realty was not within the bounds of said municipality at the time the assessment was made. The appellee answered that the said property had been brought within the limits of said municipality by an ordinance thereof, passed on December 16, 1885, in accordance with law, copies of the proceedings whereby said property had been taken into the municipal territory being referred to and attached to the answer. The appellant demurred, the demurrer was overruled and the petition dismissed; whereupon an appeal was taken to this court.

*Mallory & Maxwell* for Appellant.

*W. A. Blount* for Appellee.

·MR. JUSTICE RANEY delivered the opinion of the Court:

I. The first point involved in this case is whether or not a Provisional Municipality, instituted and existing under the provisions of Chapters 3606 and 3607, of the laws of 1885, can extend its territorial limits· in the manner provided by section 2, of Chapter 3163, Laws of 1879, amending the general incorporation act of February 4th, 1869, sec. 44, p. 255, McC.'s Digest.

The cities and towns to which the provisions of the above acts of 1885 are applicable, repealing their charters, are those incorporated under the act of 1869 and having an indebtedness to the amount of $200,000 and defaulting in the payment of interest on the same. Section 5, of Chapter 3606, makes it the duty of the Governor to appoint a Board of seven Commissioners, residents of such city or town, who shall elect one of their number as President, and also a President *pro tem.*, who shall act as President in the absence of the President, and shall exercise the powers and functions hereinafter provided and hold their office for four years. This section gives the Governor power to fill vacancies in the board, and vests the President with all the powers and charges him with all the duties of a Mayor under the Act of 1869 and the amendments thereto. Section 6 provides "that all such cities and towns for which Commissioners shall be appointed as provided for in section 5, are hereby declared to be provisional municipalities, *the boundaries of which shall be coextensive with the boundaries of such defunct cities and towns*, and the said Commissioners, and such officers as may be appointed, and the inhabitants within the limits of such cities and towns, shall be vested with all the powers and authority, rights and privileges,

and charged with all the duties which are conferred on the aldermen and other officers and the inhabitants under and by virtue of said act to provide for the incorporation of cities and towns, approved February 4th, 1869, and the amendments thereto, and other acts conferring power upon municipal corporations, except as hereinafter provided, and as may be inconsistent with this act, and all ordinances in force in such defunct corporations shall remain in force until altered or repealed by such Commissioners."

The language of the act of 1885, which we have italicised, is, in itself, nothing more than a declaration of the territorial boundaries of the new municipality. There is in it, whether considered alone or in connection with the other words or parts of the statute, nothing indicating a further or other legislative intent than a designation of the territory over which a new government might be instituted under the act, nothing that shows an intent to make these boundaries permanent. They are not used for the purpose of granting or limiting the powers of the government after it should be instituted, but are only a part of the language employed in defining the territory and people over which and in whom the new government was to be instituted and vested.

No express declaration of boundaries could be in language less indicative of an intention to make them permanent or to negative the power to change them; a declaration that the boundaries "shall be" followed by a detailed statement of the boundaries of the old city or town, would be no less expressive of the idea of permanency. To say that these words are a limitation upon the power of the new government is to give to them a meaning stronger than they naturally convey, and to apply them to a feature of the legislation which, as is evident from reading the

statute, the legislative mind had not yet reached in the work of perfecting this new system of municipal governments. It was designating that to which power should be granted, and not defining the powers to be granted.

The Legislature must be regarded as familiar with the above statute of 1879 as to alteration of municipal boundaries. Having defined the locality over which the new government might be instituted, it proceeds to declare the powers of the new municipality, saying that: The said *Commissioners, and such officers* as may be appointed, and the *inhabitants* within the limit of such cities and towns, shall be vested with all the powers and authority, rights and privileges, and charged with all the duties which are conferred on the *aldermen and other officers* and *the inhabitants* under the act to provide for the incorportion of cities and towns, approved February 4, 1869, and the amendments thereto, and other acts conferring powers upon municipal corporations, *except as hereinafter* provided and as may be *inconsistent* with this act. Here we see a clear and positive purpose to give to the municipality, as constituted under the new act, all the powers which its predecessor had, except where otherwise expressly provided in the new act, or as might be inconsistent with the provisions of the new.

The cardinal change made by the act was from an elective to an appointive system of municipal officials, a Board of Commissioners appointed by the Governor, and the president of this board taking the place of the former Board of Aldermen and the Mayor. It is not necessary to detail all the changes as to constituting officials, but there is in the act no provision upon the subject of alteration of boundaries.

Knowing, as it did, the provisions of law as to alteration of boundaries, the Legislature, if it had intended to limit the new government's power in this respect, would,

in making its grant of power, have so indicated, but instead of doing so, we see that it has expressly given to the new municipality all the powers given to other municipal corporations by the parent act, and its amendments, and all other acts conferring power on municipal corporations. Looking at the language of the act, we see no provision interdicting the use of the power contended for by appellee in this case.

It is further contended that the object of the act was the dissolution of municipal corporations when found to be in a certain stage of insolvency, and the providing of a temporary government for them when dissolved, and that it was the purpose of the law makers to secure, as well as could be done, *bona fide* creditors of such municipal corporations, by holding them in a condition of quiescence, compelling them to conserve their resources and to thus enable them to meet their just obligations. Nothing, it is argued, was further from the intent of the Legislature than to destroy municipalities with elective governments, merely for the purpose of substituting for them municipalities with officials to be appointed by the Governor, with full power and authority to conduct their municipal governments as those which they had replaced had been conducted.

It is not to be denied that the statute of 1885 makes express provision and shows a clear intent as to the payment of municipal indebtedness; it distinctly declares (sec. 12) that it shall be the duty of the Commissioners to proceed immediately to levy a sufficient tax, in addition to the other taxes provided by law, to discharge and pay the maturing coupons of bonds and other matured indebtedness, and to levy a special annual tax to meet the accruing annual interest of the bonds; it being however provided that no claim against such city, in existence at the time of the ap-

proval of the act, shall be  paid until reduced to judgment, unless the board is satisfied of the  justice and  legality of the claim.   It is also undeniable that financiaI delinquency is the test of the applicability of the act to any city or town, :and the system it establishes is provisional, but we may say that it does not seem to us that it is provisional in the sense that when instituted over  any city or  town  it was to last for only four years or for one term of appointment of Commissioners.   There is nothing in  the statute so indicating unless it be that the Commissioners shall hold their offices for four years.   The new government does not come in to supply a place during a mere suspension of the old ; the old is abolished and done away with, and the new is instituted, and no limitation is put upon its existence.   We think it is provisional in the sense that it was provided to meet the occasion and  exigencies presented by cities and towns so financially delinquent, and that the Legislature did not intend to sanction it as a permanent system but as one that should exist over any city or town only so long as the law-making power should find that the condition of such city or town required it.   As a mere means of securing the recognition and discharge of indebtedness, or, in other words, as a remedial agency for creditors, such a construction, as is contended for, does not commend it.

The question of the continuation of the system over any city or town after the expiration of four years from its institution is, we are aware, settled in the affirmative by the act of 1887, chapter 3709, but even admitting that the view of the original act taken by counsel for appellee on this point, is correct we still do not see anything in the statute inconsistent with the exercise of the power to alter the boundaries.   The remedy applied by the Legislature to cities and towns so financially delinquent was one of a gov-

ernment with appointive offices instead of an elective or popular government. Whether the financial delinquency was attended by other corporate or official omission or neglect of duty it is clear that a change in the mode of selecting officers who were to perform the functions of officials of the preceding government was the means of relief adopted. The change in the titles of office is nothing. The power to alter boundaries, whether by increase or reduction, is not necessarily one of detriment to the creditor. This power, in so far as the Commissioners or the people or voters are to take any part in its exercise, has not been withheld. The language of the grant of power covers it as fully as it covers any other. The power is no more dangerous to creditors in the hands of a provisional municipality than in the hands of one under the act of 1869, and its amendments. Finding nothing in the language or nature of the act of 1885 that excepts the power in question from the general grant of powers made to these new governments, we cannot conclude otherwise than that the Legislature intended that they should possess these powers and were satisfied that it would not be used but for purposes and in instances beneficial to all concerned. It will not be denied that where the language of an act granting powers is sufficient to give a particular power, and there is nothing in the other parts or the purpose of the act clearly inconsistent with the exercise of such power, it will be held to have passed under the grant.

II. The remaining point is that of the constitutionality of the act of March 4, 1879, chapter 3163, under which the proceedings in question annexing territory were taken.

The 29th section of the general municipal incorporation act of February 4th, 1869, chapter 1688, regulated the matter of changing corporate limits. In 1877 the Legislature passed a statute, chapter 3025, entitled " An act to amend

an act to provide for the incorporation of cities and towns and to establish a uniform system of municipal government in this State, approved February 4th, 1868." It was approved March 2, 1877, has two sections, and after the enacting clause the first section reads: "Section 1. That section 29 of said act be amended so as to read as follows:" The first section prescribes the mode for the reduction of boundaries and the second section the mode of enlarging the same.

The title of the act approved March 4, 1879, chapter 3163, is as follows: "An act to amend an act entitled an act to provide for the incorporation of cities and towns and to establish a uniform system of municipal government in the State, approved February 4th, 1869, and the acts amendatory thereof, and to further provide for the organization and government of cities." The second section of this act commences thus: "Sec. 2. That section 29 of said act, approved February 4th, 1869, as aforesaid, as amended by the act approved March 8th, 1877, be and the same is hereby amended to read as follows:" The substance of the section is divided in form into three separate paragraphs, the first of which regulates the contraction of territorial limits, the second the extension of them, and the third the annexation of one city or town to another. The second and third paragraphs are numbered 2 and 3 respectively.

In 1877 the Legislature passed also an act, Chapter 3024, which was approved March 8th, and is entitled "An act to amend sections 11, 12, 13, 16, 17, 18, 19, 23 and 29 of the general municipal incorporation act of 1869." Its first eight sections taken in their order are severally a repeal of and substitute for the 11th, 12th, 13th, 16th, 17th, 18th, 19th, and 23d sections of the act of 1869. There is in it no section repealing or standing in the place of the 29th section, nor does it in any

way affect such section. Referring to the enrolled acts in the office of the Secretary of State, we find that the act of March 2, passed the Assembly February 28, 1877, and the Senate the next day, whereas the act approved March 8, did not pass the Assembly or Senate until March 1st. Doubtless the pending or passage of the former of these two acts occasioned the omission from the act of March 8th of any substitute for the 29th section.

The act of March 2, 1877, Chapter 3025, upon its approval became for all purposes in the future the 29th section of the general municipal incorporation act of 1869. Basnett vs. City of Jacksonville, 19 Fla., 664. It was not necessary to state in the title of the act of 1879, Chapter 3163, the sections intended to be amended. State *ex rel* vs. County Commissioners of Duval Co., 23 Fla., S. C. 3rd So. Reptr, 193. Where the title of the amending act sets out the the title of the act to be amended, as does this, and the title sufficiently states the subject of the act to be amended, and the body of the amendatory act states, as does this, for what section of the act amended any of its own sections may be the amendment and substitute, there is a sufficient compliance with Sec. 14, of Art. IV, of the Constitution of 1868 providing that the "subject" of each law "shall be briefly expressed in the title, and no law shall be amended or revised by reference to its title only, but in such case the act as revised or section as amended shall be re-enacted and published at length." In so far as affecting the 29th section of the original act of 1869, as amended by the act of March 2, 1877, (Chapter 3025,) the title of the act of 1879 (Chapter 3163) would have been sufficient, had it been merely entitled an act to amend the statute of 1869, referring to it by its title and date of approval, as it does. The words: "and the acts amendatory thereof" had naturally the effect to suggest to the legislative mind that the act of

1869, as originally passed, had been subsequently amended, and that the legislation proposed would affect it as amended. This was beneficially and specifically calling the law makers' attention to the fact of such amendments. The other language of the title of the act of 1879, viz: "and to further provide for the organization and government of cities" would naturally suggest that the legislation proposed was to contain provisions relating to other subjects connected with the organization and government of cities than a mere amendment as to the subjects to which the sections to be amended related. Gibson vs. State, 16 Fla., 291. There is nothing in the title that offends the constitutional provision in question. If we regard as surplusage all of it after the date of the act of 1869 it is sufficient and such subsequent part was of itself calculated to call the legislator's attention more fully to the existing legislation to be affected.

The error in the body of section two (2) of act of 1879, as to the date of approval of the act of 1877, amending the 29th section is, we think, entirely immaterial. It can be regarded as only a clerical mistake or an error as to the real date of the approval of Chapter 3025, and not as an indication that the Legislature was ignorant as to what amendment had been made in 1879. The only amendment of the 29 section that had been made was one in 1877. Is it to be thought for a moment that the Legislature understood that the amendment which had been made in 1877 was other than that to be found in the act of March 2nd, or that they did not know that the 29th section, as amended, or as it stood in 1879, when the legislation of that year was pending, was as set out in the act of March 2nd? The only legitimate conclusion is that they understood the section to be what the act of March 2nd made it, and with it as such they were dealing, and not that they thought the act of

March 8th, Chapter 3024, contained an amendment of it. They may have mistakenly thought that Chapter 3025 was approved March 8th, but they never thought that any other act of 1877 amended the section in question.

The third section of the act of 1879 provides that after its passage no city or town shall issue bonds to secure any indebtedness unsecured, if the amount of such bonds added to any bonds outstanding, and its floating debt shall exceed eight per cent. on the assessed value of such city or town, it being declared to be the intention of the section "to limit the bonded debt of all cities and towns to eight per cent. of their assessed value, real and personal." The incorporation into an amendatory act of provisions as to matters properly connected with the subject affected by the act amended, but outside of the matters to which the expressly amendatory sections relate, is not prohibited by the constitution. Gibson vs. State, *Supra*, but even if this section three should be void we do not see how it affects the second section.

The order appealed from is affirmed.