# TAMPA WATER WORKS COMPANY *v.* TAMPA.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 29.   Argued October 27, 1905.—Decided November 13, 1905.

The constitution of Florida has a clause to the effect that the legislature is invested with full powers to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers and performing other public services of a public nature, and that it shall provide for enforcing such laws. In pursuance of this clause a law was passed empowering cities to prescribe by ordinance maximum reasonable charges for water, provided that the act should not impair the validity of any valid contract, or be held to validate any contract theretofore made. After the constitution but before the act the city of Tampa had made a contract with a water company, giving the water company the right to charge certain rates. After the act it passed an ordinance fixing lower rates, not, however, alleged to be unreasonable. The Supreme Court of Florida sustained the ordinance, reading the statute as giving the power to fix reasonable rates, when it was possible, without impairing the obligation of contracts, and the constitution as meaning that the legislature was to have an inalienable power to make such laws. *Held* that this interpretation was sufficiently plausible to be followed.

The facts are stated in the opinion.

*Mr. W. A. Carter,* with whom *Mr. S. M. Sparkman* was on the brief, for plaintiff in error.

*Mr. Hugh C. Macfarlane* and *Mr. James F. Glen* for defendant in error.

Mr. Justice Holmes delivered the opinion of the court.

This case comes here by writ of error to a decree dismissing the bill of the plaintiff in error upon demurrer. 34 Southern Rep. 631; 36 Southern Rep. 174. The bill alleges a contract between the plaintiff water company and the city of Tampa, by which the former was to erect water works and to

have the right to charge certain rates for the use of its water for thirty years, with various other terms not necessary to mention. By a subsequent ordinance the city fixed lower rates as the highest to be charged by any person or corporation furnishing water to the city or its inhabitants, and imposed a penalty on violation of this ordinance or refusal to furnish water in compliance with its terms. The bill sets up that this ordinance impairs the obligation of the plaintiff's contract and takes its property without due process of law, contrary to the Constitution of the United States. The city justified under section 30, article XVI, of the state constitution in force when the contract was made, and under an act approved May 31, 1901, chapter 5070, after the date of the contract. The Supreme Court of the State held the justification sufficient and dismissed the bill.

We assume for the purpose of decision that the contract made was within the powers of the city, subject to whatever qualification or inherent weakness the constitution created or imposed. We assume also that the case shows more than a mere breach of contract by the city if its justification fails, and pass at once to the merits of the justification.

The clause of the state constitution is as follows: "The legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature, and shall provide for enforcing such laws by adequate penalties or forfeitures."

In pursuance of this clause in the constitution the legislature passed the act referred to above. By this act the corporate authorities of cities, towns and villages were empowered to prescribe by ordinance maximum charges for water. "Such charges to be just and reasonable; Provided, that this act shall not be so construed as to impair the validity of any valid contract heretofore entered into between any city, town or village and any person, firm or corporation for the supply of water to

such city, town or village or its inhabitants.    But this act shall not be held to validate any contract heretofore made." This act was construed by the Supreme Court of Florida, as we understand it, to mean that cities might establish reasonable maxima in any case where they could do so without impairing the obligation of contracts.    Therefore the act was held to authorize the ordinance complained of unless the ordinance was open to constitutional objection.    This construction of the statute is a very slight extension of the direct meaning of the words used, and seems to us reasonable even if a somewhat different one could be conceived.    Of course it removes any question of constitutionality from the statute, and therefore there seems to be no ground for reviewing the decision upon that point    *Central Land Co.* v. *Laidley*, 159 U. S. 103; *Weber* v. *Rogan*, 188 U. S. 10.

We turn to the construction of the constitution of the State. There was some argument that the clause was not self-executing. But so far as it expressed a power of the legislature, of course, as soon as the constitution went into effect, that power existed at once, and contracts afterwards were made subject to the possibility of its exercise, as it was exercised by the subsequent statute.    *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347, 355; *Bienville Water Supply Co.* v. *Mobile*, 186 U. S. 212.    The only question then is, how far the clause of the constitution goes.    When the contract was made there had been no judicial construction of the clause which withdrew the contract from its operation, nor has there been since, so far as we are aware.    There is no ground for the application of the doctrine of *Muhlker* v. *New York & Harlem R. R.*, 197 U. S. 544, or *Gelpcke* v. *Dubuque*, 1 Wall. 175.    In such circumstances, although we construe the constitution for ourselves and determine the existence or non-existence of the contract set up and whether its obligation has been impaired by the state enactment, *Douglas* v. *Kentucky*, 168 U. S. 488, 502, "the Federal Courts will lean towards an agreement of views with the state courts if the question seems to them balanced

with doubt," a principle reinforced by the later cases. *Burgess*
v. *Seligman,* 107 U. S. 20, 34; *Wilson* v. *Standefer,* 184 U. S.
399, 412; *Bienville Water Supply Co.* v. *Mobile,* 186 U. S. 212,
220; *Chicago Theological Seminary* v. *Illinois,* 188 U. S. 662,
674, 675, 677.

It cannot be said that the interpretation adopted is not a
possible one. Water companies are corporations performing
services of a public nature quite as much as common carriers,
and, therefore, are within the words of the clause, which is not
confined to common carriers. A natural method of preventing
excessive charges is the passage by the cities or towns, within
which the services are performed, of ordinances establishing
reasonable rates and punishing non-compliance. Therefore the
power to prevent excessive charges given to the legislature
properly was exercised by a law granting cities authority to
pass ordinances of the kind supposed.

So much probably would be admitted, but it is said that the
clause is merely declaratory of powers which the legislature
would have had without it, and which with or without it the
legislature could cut down by contract. The argument is not
without force, but it did not prevail in this case and we are not
prepared to overrule the Florida courts in their interpretation
of their own laws. It is entirely possible to read the words
as conferring a power which by their very form they were meant
to make inalienable. No doubt some sort of a legislature
would exist, constitution or no constitution, and presumably
would have power to regulate rates charged by companies
performing public services or to restrict that power by a con-
stitutionally binding contract. But the actual legislature de-
rives its being, its form as a Senate and House of Representa-
tives and its powers, from the instrument in force. When the
constitution says that the legislature "is invested" with a
certain power it invests it with that power and does so none
the less that in the absence of those words a more or less
similar power would be implied by more general expressions
in the same instrument. It says that the power shall be "full

power," and the adjective may be read as meaning a power which cannot be cut down. When it goes on to require that the legislature "shall" provide for enforcing the laws which it is expected to pass for the correction of abuses and the prevention of excessive charges the argument is strengthened that it means to impose a duty which the legislature is not at liberty to give up. Such was the opinion of the Supreme Court of Florida, and we have yielded to the judgment of the state court upon more doubtful questions than this.

The case stands on the single ground of contract. There is no allegation that the rates fixed by the new ordinances are unreasonable or that their effect will be to destroy or considerably impair the value of the plaintiff's property. Although the Fourteenth Amendment is invoked, no case is made out under it on any other ground than that the obligation of a binding contract is impaired. The single question is whether the city of Tampa is bound for thirty years from the date of its agreement to permit certain specified rates to be charged, even if they have ceased to be reasonable. We are not prepared to say that the Supreme Court of Florida was wrong in deciding that it is not bound under the Florida constitution and laws. The effect of a former decree dismissing a bill brought by the city, which is set up in this bill, cannot be reargued here.

*Decree affirmed.*

MR. JUSTICE BROWN, with whom was MR. JUSTICE PECKHAM, dissenting.

In September, 1887, the Water Works Company made a contract with the city for the establishment of water works, in which it was agreed that the contract should continue in force for thirty years from the time the works were completed and ready for duty, and that the owners might charge and collect quarterly in advance, for water furnished to private consumers, prices not to exceed certain maximum rates fixed by the contract.

At this time there was in force the following constitutional provision in Florida:

"The legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature, and shall provide for enforcing such laws by adequate penalties or forfeitures."

By an act of the legislature passed May 31, 1901 (chap. 5070), the corporate authorities of any city were empowered to prescribe by ordinance maximum rates and charges for the supply of water, such charges to be just and reasonable; provided, "that this act shall not be so construed as to impair the validity of any valid contract heretofore entered into . . . for the supply of water to such city," "but this act shall not be held to validate any contract heretofore made."

On December 20, 1901, the city council of Tampa passed the ordinance complained of, No. 274, which provided that "it shall be unlawful for any individual, company or corporation furnishing water to the city of Tampa, or its inhabitants, to charge any higher rates for water than those hereinafter specified." The ordinance made a large reduction in the rates fixed by the original ordinance or contract, and thereby, as it is alleged, impaired its obligation.

The constitutional provision was evidently not self-executing, though it vested full power in the *legislature* to prevent excessive charges for the performance of public services. The legislature did not see fit to exercise this power to its full extent. But in authorizing corporate authorities in any State, etc., to fix rates, provided that *the act should not be so construed as to impair the validity of any valid contract.* This it had the right to do. It was not bound to exercise the whole power vested in it by the constitution, but might grant so much of such power to the corporate authorities as it deemed best for the public interests. This we have repeatedly held with respect to parceling out the power vested in Congress by the Constitution.

*McIntire* v. *Wood*, 7 Cranch, 504; *Kendall* v. *United States*, 12 Pet. 524, 616; *Cary* v. *Curtis*, 3 How. 236, 245.

It follows that if the ordinance of 1901 impaired the original contract between the water works and the city, it exceeded its powers under the act of the legislature.

In its opinion the Supreme Court of Florida assumed, without deciding, that "the powers granted to the city were sufficient to authorize it to contract with the Water Company for a public and private supply of water," and were also sufficient to enable the city to insert clauses fixing the rates, and obligating the city to pay these rates for water used by it during the entire contract period, and that the same powers existed of fixing the rates for water supply to individuals.

Now, as the constitution only delegated to the *legislature* the power to authorize the corporate authorities to reduce rates, and the legislature delegated that power only in cases where it did not impair the validity of any contract, it seems to me clear that the city council of Tampa exceeded its authority in reducing rates protected by a contract, and must be held to have impaired its obligation.