FLORIDA MOTOR LINES CORPORATION, a Florida corporation, v. W. B. DOUGLASS, EUGENE S. MATTHEWS and JERRY W. CARTER, constituting the Railroad COMMISSION of the State of Florida, (Glades Motor Lines, Inc.)

4 So. (2nd) 856

En Banc

Opinion Filed December 3, 1941

*Milam, McIlvaine & Milam,* for Petitioner;

*Theo T. Turnbull,* for Respondents;

*Dewey Knight* and *A. Pickens Coles,* as *Amici Curiae.*

PER CURIAM.—Florida Motor Lines Corporation presented a petition for a writ of Certiorari to be issued to the Railroad Commission and prays this Court, in due and regular course to give consideration to the matters and things alleged, and upon such consideration to

"(a) Quash that portion of respondent Railroad Commission's order of February 7, 1941 (Petitioner's Exhibit No. 11) denying your petitioner, Florida Motor Lines Corporation, the extension of its operating rights sought by its application over State Roads 67, 26 and 26-A between Childs Crossing and Miami via Moore Haven, Clewiston, South Bay, and thence via Hialeah and via Twenty Mile Bend and Ft. Lauderdale;

(b) Quash that portion of the respondent Commission's order of February 7, 1941, (Petitioner's Exhibit No. 11) granting Mary Kettner, as Glades 'K' Motor Lines, operating rights and privileges over State Road 67 between Moore Haven and Childs Crossing; . . ."

There are two other orders sought to be quashed. If they are incidental to the orders referred to as (a) and (b), they will abide the decision of the first two. If they are not so incidental, they should be challenged in separate proceedings.

Essential portions of the order of the Railroad Commission dated February 7, 1941, are as follows:

"2. The main purpose of these applications is to secure operating rights over a new highway being constructed through the Everglades designated as State Road 26, connecting South Bay at the Southern end of Lake Okeechobee with Miami and Fort Lauderdale. This highway is expected to be open for traffic

between Fort Lauderdale and South Bay early in 1941, but it will be sometime before the portion going directly into Miami is finished.

"3. Glades 'K' Motor Lines operates between West Palm Beach and Fort Myers serving Canal Point, Pahokee, Belle Glade, South Bay, Clewiston and Moore Haven. These towns on Lake Okeechobee will be hereinafter referred to as the Lake Region. Glades 'K' seeks to extend its operation from South Bay over Road 26 to 20-Mile Bend west of Fort Lauderdale; thence over Road 26-A to Fort Lauderdale; thence South over State Road 4 into Miami but with closed doors between Miami and Fort Lauderdale which are served by Florida Motor Lines.

"4. Florida Motor Lines operates between Miami and West Palm Beach and points north along the East Coast and operates a cross-state service from West Palm Beach to Canal Point and Okeechobee City via roads 25 and 194; thence west over Road 8 to Childs Crossing; thence North through what is known as the Ridge Section serving Sebring, Avon Park, Lake Wales, Haines City, thence West through Lakeland to Tampa and St. Petersburg. The main object of Florida Motor Lines is to improve this cross-state service by operating around the South side of Lake Okeechobee using Roads 26 and 26-A from Miami and Fort Lauderdale to South Bay; thence West through Clewiston over Road 25; thence North through Moore Haven over Road 67 to Childs Crossing from where the existing route would be followed northward. This proposed route will be approximately thirty (30) miles shorter and save about one hour in time on this cross-state service as between Miami and the Ridge Section.

"5. Both applicants produced many witnesses to show the need for bus service over the new Road 26, and in addition Florida Motor Lines presented evidence to show the advantages of improving its cross-state service. The evidence is convincing that public convenience and necessity will require bus service over Road 26 into Miami or Fort Lauderdale upon the completion of that highway, and the Commission so finds. The evidence is not so convincing that there is any great need for the improved cross-state service offered by Florida Motor Lines. The relatively small saving in distance and time will result in improved service to that extent but this will be true only of the one schedule daily that Florida Motor Lines proposes to operate over the new route; one schedule daily would still be operated through Palm Beach and around the north side of the Lake. Also little need was shown for additional service between the Lake Region and the Ridge Section as there is little trade between these areas. Direct rail service exists between Clewiston and the Ridge Section, and there is bus service via interchange at Canal Point between Florida Motor Lines and Glades 'K', this being the shortest route to the Ridge Section from the most populous part of the Lake Region, the area around Canal Point, Pahokee and Belle Glade. The bulk of the traffic moving into and out of the Lake Region section will be that between the Region and the Miami-Fort Lauderdale areas and consideration of that traffic must govern the determination of these applications.

"6. The law requires this Commission in granting Certificates of Public Convenience and Necessity to consider the effect upon other carriers serving the

territory involved. The Commission does not believe that both applicants should compete over Road 25; Public conveniences and necessity requires only one carrier in this area. Since the law provides for the protection of existing franchises as far as the same may be done without depriving the public of services reasonably necessary, the rather difficult problem of determining which of these two able and willing carriers should be granted the certificate resolves itself into deciding first into whose territory the new service more properly falls, and second, probable damage and loss of business that would result from the granting of either and the denying of the other application. A study of the routes and operating rights discloses that Glades 'K' Motor Lines has been the only bus carrier serving the Lake Region for many years. Florida Motor Lines operates through Canal Point but this service has always been to accommodate the cross-state traffic and not to serve the Lake Region. The record shows that both by limitation placed thereon by the Commission and by agreement between the two carriers, Florida Motor Lines handles no traffic between Canal Point and West Palm Beach without giving Glades 'K' the revenue therefrom. Glades 'K' depends for its existence entirely upon traffic into and out of the Glades section and the Commission finds that any additional service into and out of the area should be furnished by it. It would serve no useful purpose to attempt to analyse all the evidence going to the relative damage to each carrier should its application be granted and the other's denied. The evidence is not very complete in this respect and it will be sufficient to say that the Commission finds that the preservation of proper transportation facilities

in the area involved requires that the services of the small carrier serving the Lake Region be preserved without any impairment. That Glades 'K' will be injured by permitting Florida Motor Lines to operate directly through its only exclusive territory is clearly shown by the record. The application of Glades 'K' to operate into Fort Lauderdale and Miami over Road 26 will be granted and that of Florida Motor Lines denied.

"7. Since there is need for some service connecting the Lake Region and the Ridge Section via Road 67 and this is also more properly within the territory of Glades 'K' Motor Lines, that carrier, in accordance with its proffer to furnish such service if the Commission found need therefor, will be required to extend its service from Moore Haven to Childs Crossing, there to make such connection with Florida Motor Lines as the two carriers may agree is proper. If the carriers cannot agree on this interchange, that problem together with any other that might arise in connection with the institution of this new service will be subject to the further order of the Commission. Glades 'K' Motor Lines will be expected to file immediately such new schedules and rates as it proposes to use in its entire operations as extended by this order.

"Wherefore it is CONSIDERED, ORDERED AND ADJUDGED by the Railroad Commission of the State of Florida that the application of Florida Motor Lines Corporation for extension of its Certificate of Public Convenience and Necessity to include operations over State Roads 67 and 25 between Childs Crossing and South Bay and over Roads 26 and 26-A between South

Bay and Fort Lauderdale and Miami, be and the same is hereby Denied.

"It is further ORDERED that the application of Mary M. Kettner, doing business as Glades 'K' Motor Lines, for extension of her Certificate of Public Convenience and Necessity No. 108 to operate over State Road 26 between South Bay and Fort Lauderdale and between Miami and Fort Lauderdale over State Road 4, be and Same is hereby GRANTED: Provided that the operation shall be with closed doors as to all traffic moving between and including Miami and Fort Lauderdale.

"It is further ORDERED that Mary M. Kettner, doing business as Glades 'K' Motor Lines, is hereby required and authorized to extend her motor bus transportation service from Moore Haven over Road 67 to Childs Crossing and return.

"DONE AND ORDERED by the Railroad Commission of the State of Florida in session at its office in the City of Tallahassee, Florida, this 7th day of February, 1941.

"(Signed) W. B. DOUGLAS, Chairman.

"MATTHEWS, COMMISSIONER, CONCURRING IN PART:

"I am in full accord with that portion of the within order which grants to Mary M. Kettner, doing business as Glades 'K' Motor Lines, authority to operate into the Miami area and thus enable her to more adequately serve the Lake Region. However, both Florida Motor Lines and Glades 'K' Motor Lines have been operating in this territory—the Florida Motor Lines operating on the ·North side of the Lake and Glades 'K' Motor Lines on the South side. In addition, Florida Motor Lines serves what is known as the Ridge Section and the granting of its application would enable it to furnish a more adequate

and efficient through service into Miami for this section, and the evidence is convincing to me that it should be permitted to furnish this through service.

"I am of opinion, therefore, that both applications should have been granted under such limitations and agreements as now exist between Florida Motor Lines and Glades 'K' Motor Lines. If this were done the revenues of Glades 'K' Motor Lines would be adequately protected and the important Ridge Section of the State would be furnished a much needed through service which this Commission and the Courts have held to be desirable.

"(Signed) EUGENE S. MATTHEWS, Commissioner."

"The review on certiorari is to determine whether an order as made by the Railroad Commission is illegal as matter of law or was made without observing the provisions of law regulating the matters to be considered or the procedure for the findings and conclusions, or whether in its operation the order will violate organic or fundamental rights, or is merely arbitrary without sufficient support in evidence or proceedings had.

"If there is substantial competent evidence that is legally sufficient to support the findings and conclusions of the Railroad Commission, and no rule of law was violated in the proceedings, and the whole record does not show an abuse of authority or arbitrary action, the findings and conclusions of the Railroad Commission will not be set aside on certiorari even though the reviewing court might have reached different conclusions on the evidence." Fla. Motor Lines Inc., v. RR Comm., 101 Fla. 1018, 132 So. 851.

Upon due consideration of the record and the con-

tentions made thereon, the resulting conclusion is that the orders as stated above are, upon the facts, circumstances and conditions appearing when the orders were made, not shown to be illegal or unauthorized or an abuse of reasonable discretion conferred upon the Railroad Commission by the statutes; though changed conditions and circumstances arising consequent upon the rapid development of the State, might justify or require changes or modification of the orders here considered, within the intendments of the law under Sec. 30, Art. XVI of the Constitution of 1885.

Certiorari, denied.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, CHAPMAN, THOMAS and ADAMS, J. J. concur.