MIAMI BRIDGE COMPANY, a Florida corporation, v. RAILROAD COMMISSION OF THE STATE OF FLORIDA.

20 So. (2nd) 356

December 19, 1944

Rehearing denied January 26, 1945

June Term, 1944

En Banc

*Mitchell D. Prize, Zaring & Florence* and *Keen & Allen,* for petitioner.

*Lewis W. Petteway* and *George L. Patten,* for respondent.

*Loftin, Anderson, Scott, McCarthy & Preston* and *Tyrus A. Norwood,* as Amicus Curiae.

CHAPMAN, J.:

It was made to appear by petition of the Miami Beach Railway Company filed before the Railroad Commission of the State of Florida on January 17, 1944, that it was engaged in the operation of a bus line from the City of Miami to the City of Miami Beach, and in so doing was required to cross over a bridge spanning, in part, Biscayne Bay operated by the Miami Bridge Company under the provisions of Chapter 10497, Special Acts of 1925, Laws of Florida. This Act

granted a franchise and authorized the Bridge Company to fix a rate or rates chargeable to be paid by the petitioner for the passage of its busses over the bridge operated by it and known as the "Venetian Way." Chapter 21743, Laws of Florida, granted authority to the State Railroad Commission to regulate the operation and to fix the amount of tolls chargeable by the Miami Bridge Company for the use by the public of the bridge, inclusive of the busses of petitioner.

Petitioner represented that during the Winter season it operated about twenty busses daily over the bridge, which was equivalent to approximately 300 one-way trips per day thereon. Likewise, during the summer months it operated ten busses over the bridge, which was the average of 150 one-way trips per day; that the rate of fifty cents per round trip demanded for the passage of each bus over the bridge or causeway was unreasonable, arbitrary, excessive and extortionate; that the Miami Bridge Company had previously entered into an agreement with the Venetian Short Way, Inc., operator of jitneys and a carrier of passengers by automobile for hire, the terms of which permitted passage over the bridge at the rate of $1.20 per automobile, irrespective of the trips made or the number of passengers carried; that these automobiles averaged 50 one way trips daily during the winter season and the cost therefor was three cents per trip as compared to twenty-five cents per trip demanded of the petitioner by the Miami Bridge Company.

The petitioner prays that the State Railroad Commission take jurisdiction of the cause under the provisions of Chapter 21743, *supra,* and after a hearing by the respective parties, make and enter an order fixing a just and reasonable rate for petitioner's busses using the "Venetian Way." The Miami Bridge Company, in response to the aforesaid petition, filed five pleas going to the jurisdiction of the State Railroad Commission to hear, consider and adjudicate the tolls and charges, as well as the hours for keeping open for traffic the "Venetian Way," and simultaneously filed a motion to dismiss the petition.

The first plea in substance alleged that the bridge was built and operated under a franchise granted for a period of

ten years to Bay Biscayne Improvement Company by the Board of County Commissioners of Dade County, Florida; that the company owned the right-of-way and the temporary wooden bridge constructed prior to 1925 and when Chapter 10497, Special Acts of 1925, was enacted and became effective; the present "Venetian Way" was constructed since the enactment of Chapter 10497, *supra,* and financed by a bond issue of $1,000,000.00; the bridge with all rights, privileges and franchises on July 1, 1926, were conveyed to the Biscayne Bay Bridge Company; that the franchise rights were acquired from Dade County for ten years after 1924 and under Chapter 10497, *supra*; and that the bridge was operated for approximately seven years after the franchise was granted and was therefore excluded or exempted from the operation of Chapter 21743, *supra,* as evidenced by the language therein viz:

"Provided, however, that this section shall have no application to toll bridges that may, after June 6, 1927, have been or be constructed by any county, or any political subdivision of any county, or to any toll bridge constructed and operated under any franchise or license granted by the county commissioners of any county."

The second plea alleged, in substance, that Chapter 21743, *supra,* cannot be enforced or made operative without impairing vested rights of the Miami Bridge Company and each stockholder, bondholder and contract holder now transacting business with it; that the power and authority to fix tolls and charges for the use of the bridge were granted to it under the several provisions of Chapter 10497, *supra*; that the courts are powerless to change these rates except when shown to be unreasonable or in amount exceeding the rate allowed by Chapter 10497; that the respondent was the owner of the "Venetian Way" when Chapter 21743 was enacted and had outstanding a bond indebtedness, contracts and other obligations; that if the State Railroad Commission assumes jurisdiction of this controversy, large expenditures of money in appraisals, bookkeeping system, repairs, etc., made at the cost of the Miami Bridge Company will result in a heavy loss to the stockholders, bondholders and contract holders having acquired vested rights in the "Venetian Way;" that Section

347.20 Fla. Stats. 1941, provides that nothing in this Chapter shall affect or impair any right or privilege belonging to an individual or corporation by virtue of any law of Florida.

The third plea, in substance, alleges that Chapter 10497, *supra,* provided for the construction of the bridge, fills, approaches and roadways; that the respondent accepted the franchise rights and constructed the bridge at a cost of approximately $1,500,000.00 by floating bonds, with the entire bridge as security for the payment thereof; that Section 5 of Chapter 10497 authorized the collection of tolls and the schedule was made a part of the Act and a charge in excess of the prescribed schedule rate has never been made by the respondent; that acceptance of the franchise rights granted by the State of Florida and a full, clear and detailed performance of each of the terms and conditions thereof constitutes a contract protected by the Federal and State Constitutions; that the only source of revenue for the payment of the outstanding bondholders is the revenue in the form of tolls charged for the use of the bridge on the part of the public; the schedule of rates chargeable was considered by the respondent in the acceptance of the franchise rights, the performance of the terms thereof and the daily tolls or receipts from the use of the bridge were offered as inducements to the purchasers of the bonds; that if a material change in the rate of chargeable tolls is made by an order of the State Railroad Commission, then heavy losses will accrue to the respondent and the many stockholders which in law is equivolent to the violation of the sanctity of the contract.

The fourth plea, in substance, alleged that Chapter 21743, *supra,* is unconstitutional and void in that the State Railroad Commission is granted the power and authority to fix a schedule of rates chargeable for the use of the bridge; that Section 11 of Article V of the State Constitution placed the exclusive original jurisdiction of such controversies or cases in the circuit courts of Florida.

Counsel for the Miami Bridge Company in reference to its fifth plea, say:

"The fifth plea to the jurisdiction of the Railroad Commission alleges that there was no question of public necessity

involved; that no person had ever raised any complaint as to the reasonableness or unreasonableness of any rate fixed by the Miami Bridge Company save and except The Miami Beach Railway Company, which is earning a large profit by the use of the bridge owned by the Miami Bridge Company; that the matter raised by the petition filed with the Railroad Commission was purely a private controversy between the Miami Beach Railway Company and the Miami Bridge Company wherein The Miami Beach Railway Company sought to use the Railroad Commission to help them win their law suit. It was contended that it was contrary to public policy and contrary to the law as enunciated by this Honorable Court that the Railroad Commission should intermeddle with private controversies and interfere with any public utility solely for the purpose of settling a dispute in which the public at large is not interested.

In our pleas we pointed out that there was a public bridge, built and maintained at public expense, immediately south of the Venetian Causeway, and two public bridges immediately north of it. No person was compelled to use the bridge owned by the Miami Bridge Company; the rights of the public were in no way jeopardized by any rate that might have been fixed by the Miami Bridge Company; that the pleadings show that no person ever objected to the rates made by the Miami Bridge Company save and except The Miami Beach Railway Company, which filed its petition with the Railroad Commission."

On May 18, 1944, the Railroad Commission, by appropriate order entered, sustained on various grounds and for different reasons motions to strike directed to pleas 1, 2, 3, 4 and 5, respectively, of the Miami Bridge Company and therein fixed a date of hearing of the parties and counsel on August 1, 1944. A petition for rehearing was filed and the same denied by the Railroad Commission under date of June 10, 1944. On petition for certiorari presented by the Miami Bridge Company we are requested to quash these orders, although a final judgment has not been entered by the State Railroad Commission. See Section 350.64, Fla. Stats. 1941 (F.S.A.); Tamiami Trail Tours, Inc. v. Florida Railroad Commission, 128 Fla. 25, 174

So. 451; Florida Motor Lines Corp. v. Douglass, 148 Fla. 598, 4 So. (2nd) 856; Atlantic Coast Line R. R. Co. v. Railroad Commission, 149 Fla. 245, 5 So. (2nd) 708. The burden of showing that the challenged order was illegal or unauthorized and failed to accord with the essential requirements of the law applicable to the matters under review is on the petitioner. See Atlantic Coast Line R. R. Co. v. Railroad Commission, *supra.*

The denial of the petitioner's first plea by the order of the Railroad Commission is the basis of its first question posed here for adjudication. It is viz: Was the Venetian Causeway which was first constructed and operated under a franchise granted by the County Commissioners of Dade County, Florida, and which is now owned and operated by the Miami Bridge Company, embraced within the provisions of Chapter 21,743 enacted at the 1943 session of the Florida Legislature?

Petitioner obtained, during the year 1924, a franchise from Dade County for a period of ten years, as authorized by statute, and the terms, conditions and provisions thereof appear to have been observed by the parties. Chapter 10497, *supra,* was enacted in 1925 and the petitioner, or its predecessor in interest, functioned under the terms and conditions of this Special Act. Section 5 of the Act provides that the tolls collected for travel over the bridge shall not exceed the schedule named therein. It is not disputed that the Bridge Company issued bonds and with the proceeds thereof constructed the bridge as authorized by the provisions of the Special Act supra.

Chapter 21743, *supra,* amended Section 347.08, Fla. Stats. 1941 (F.S.A.) and the effect thereof was to authorize the Florida Railroad Commission to fix tolls and regulate the operation of the "Venetian Way" owned and operated by the petitioner. Where there is an amendment to a Section of a statute, the amendatory Section takes the place of the Section amended as a part of the original Act. See Stokes v. Galloway, 61 Fla. 437, 54 So. 799; Saunders v. Provisional Municipality of Pensacola, 24 Fla. 226, 4 So. 801. When a Section is amended by an enactment by stating it "shall read as follows," the amendment desired then follows, then the sub-

stituted amendment becomes for all purposes in the future the Section of the original Act. See Basnett v. Jacksonville, 19 Fla. 664; Atlantic Coast Line R. Co. v. Amos, 94 Fla. 588, 115 So. 315.

It is contended that petitioner's bridge is not embraced within, but specifically excluded from, the several provisions of Chapter 21743, *supra*, for reasons (1) the bridge was operated for a period of ten years after 1924 under the terms and provisions of a franchise granted to petitioner's predecessor by the County Commissioners of Dade County; (2) the State of Florida, by the enactment of Special Chapter 10497, *ipso facto* extended for many years the franchise privileges previously granted; (3) petitioner observed the several provisions of the franchise, inclusive of giving a bond; (4) Chapter 21743, in part provides, "that this Section *shall have no application* to toll bridges that may, after June 6, 1927, have been or are (to) be constructed by any company, or any political subdivision of any county or to any toll bridge constructed and operated under any franchise or license granted by the county commissioners of any county; (5) Chapter 21743, *supra*, should be construed with other statutes *in pari materia*.

It is necessary to ascertain the will and intent of the Legislature in the enactment of Section 347.08, Fla. Stats. 1941 (F.S.A.). It provides that this Section shall have *no application* to toll bridges that may have been constructed (1) after June 6, 1927; (2) or that may hereafter be constructed (a) by any county, or (b) by any political subdivision of any county; (3) or to any toll bridge constructed and operated under any franchise or license granted by the county commissioners of any county. From our study of the record, it is clear that petitioner's "Venetian Way," or bridge, does not fall within any of the exceptions above enumerated. It was intended by the Legislature that the many provisions of the Act should apply to petitioner's bridge. When the legislative intent is manifested by the language employed in an Act, when considered in its ordinary and grammatical sense, ordinary rules of construction become unnecessary. See Jackson v. Edwards, 144 Fla. 187, 197 So. 833.

The second question posed for adjudication is viz: Did

those who accepted the provisions of Chapter 10497, enacted in 1925, and who constructed the "Venetian Way" at enormous expense and those who invested money in the purchase of stocks and bonds to make possible the construction of said causeway, acquire any vested rights which would be protected by Section 347.20 of the Florida Statutes as compiled in 1941?

Some of the essentials of plea two of the petitioner, held legally insufficient, by the Railroad Commission appear *supra*. Counsel emphasize acquired or vested rights in the bridge property which it is asserted are vouchsafed by the fundamental law, and in part are viz: (1) the right to construct the bridge in accordance with the plans and specifications approved by the War Department; (2) the right to construct bridges, docks, wharves, toll houses, and other buildings; (3) the right to issue bonds with the bridge as security and with the proceeds thereof to construct the bridge, fills, approaches and draw bridges; (4) to exercise the rights under the franchise granted by the State of Florida for a period of 25 years; (5) the right to exercise the rights granted by the franchise for an additional period; (6) the right to charge tolls for the use of the bridge provided for in Section 10497; (7) the franchise right to permit the operation of busses or jitneys or other transportation of passengers and freight for hire over the "Venetian Way"; (8) the right under the franchise to permit the exclusive operation of a bus line or transportation company across the bridge.

It is further contended that Section 347.20, Fla. Stats. 1941 (F.S.A.), which provides, "Nothing in this Chapter shall affect or impair any right or privilege belonging to any individual or corporation by virtue of any law of this State," should be construed as being in *pari materia* with other pertinent statutes; that the State of Florida, by Section 5 of Chapter 10497, conferred the exclusive right to fix a schedule of rates for the use of the bridge on the petitioner and the State of Florida having once granted this exclusive right, it is powerless at a subsequent session, as attempted by Chapter 21743, *supra*, to alter the rates or authorize other governmental agencies so to do.

The third question posed for adjudication is viz: Do the Constitution of the State of Florida and the Constitution of the United States prohibit the Florida Legislature from passing a law which will impair the obligation of a valid contract made by legislative action between the State of. Florida and a. private individual or corporation, and did the acceptance of the provisions of Chapter 10497, Acts of 1925, by a private corporation and the expenditure of large sums of money by said private corporation in the construction of a toll bridge in accordance with the terms and conditions thereof, create a valid and binding contract between the State of Florida and such private corporation which would be protected by the Constitution of the United States and the Constitution of the State of Florida?

The basis of the third question is raised by the third plea of the petitioner filed with and denied by the Railroad Commission. It is contended that the plea involved points: (1) the State of Florida had the power to enact (Chapter 10497 and thereby entered) into a contract with petitioner; (2) the contract as made was based upon a valuable consideration and protected by the State and Federal Constitutions; (3) the contract rights established by Chapter 10497 cannot be subsequently disturbed, as was attempted by the enactment of Chapter 21743; (4) Section 347.08, Fla. Stats. 1941 (F.S.A.) should be considered in construing Chapter 21743; (5) That Section 5 of Chapter 10497, supra, prescribed maximum rates chargeable for the use of the bridge by the public and the Legislature having exercised its right to act within the police power and rights of third persons attach, then, the Legislature is powerless to alter or change the rates, as authorized by Chapter 21743, *supra;* (6) it has not been made to appear that the public health, safety or welfare was in jeopardy when the Legislature enacted Chapter 21743; (7) the purchasing power of the dollar has depreciated since the enactment of Chapter 10497 and labor and other items incident to the operation of the bridge have increased, thus the reason for charging the rate demanded of the respondent; (8 the police power of the Legislature was exercised by the enactment of Chapter 10497 and it cannot be subsequently so

exercised as to violate contract right vouchsafed by the fundamental law; (9) contracts made by states should be sacredly protected.

Because of the similarity of the many points raised by questions two and three, *supra,* it is our view that the two can or may be considered and disposed of under a single assignment. We are in accord with the many authorities cited and relied upon by counsel for petitioner. The point of cleavage arrives upon the application of the cited authorities to the facts involved in this controversy. The effect of Chapter 21743, *supra,* is simply to transfer the power and authority to fix the amount of the rate to be paid by the public for the use of the "Venetian Way" from Miami Bridge Company, its present owner, with additional minor regulations, to the Florida Railroad Commission.

It is established law that the inhibitions of the Constitution of the United States upon the impairment of the obligations of contracts, or the deprivation of property without due process, or the equal protection of the law by the states are not violated by the legitimate exercise of legislative power in securing the health, safety, morals and general welfare. The governmental powers cannot be contracted away, nor can the exercise of rights granted, nor the use of the property, be withdrawn from the implied liability to governmental regulations. The right to exercise the police power is a continuing one. The franchise granted by Chapter 10497, supra, was accepted with the full knowledge of the existence of the police power which authorizes regulations in behalf of the public. See Philips Petroleum Co. v. Jenkins, 297 U. S. 629, 80 L. Ed. 943, 56 S. Ct. 611; Chicago, Burlington, & Q. R. R. Co. v. Nebraska, 170 U. S. 57, 42 L. Ed. 948, 18 S. Ct. 513; Home Building & Loan Ass'n. v. Blaisdwell, 290 U. S. 398, 78 L. Ed. 413, 54 S. Ct. 231; Northern Pacific Ry. Co. v. Minnesota, 208 U. S. 583, 52 L. Ed. 630, 28 S. Ct. 341.

The State as an attribute of sovereignty is endowed with inherent power to regulate the rates to be charged by a public utility for its products or service. Contracts by public service corporations for their services or products, because of the interest of the public therein, are not to be classed with

personal and private contracts, the impairment of which is forbidden by constitutional provisions. 16 C.J.S. 766-773, par. 327.

Independently of the inherent power of sovereignty, Section 30 of Article XVI of the Constitution of Florida confers on the Legislature of Florida full power to pass laws for the correction of abuses and to prevent unjust discrimination and excess charges by persons and corporations engaged as common carriers in transporting persons and property or performing "other service of a public nature." There is no reasonable basis for the contention that the Legislature was without lawful power of authority under the police power of the Constitution to enact Chapter 21743, *supra.*

We have carefully studied the questions propounded and the several grounds urged to sustain them, along with the authorities cited. It is our conclusion that these questions have each been answered adversely to contentions of counsel for petitioner by former decisions of this Court. See City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 So. 631 (aff. Tampa Waterworks Co. v. City of Tampa, 199 U. S. 241, 26 S. Ct. 23, 50 L. Ed. 170); State ex rel. Ellis v. Atlantic Coast Line R. R. Co., 51 Fla. 578, 40 So. 875; Tampa Water Works Co. v. City of Tampa, 47 Fla. 338, 36 So. 174 (aff. 26 S. Ct. 23, 199 U. S. 241, 50 L. Ed. 170); Gainesville Gas & Electric Power Co. v. Gainesville, 63 Fla. 425, 58 So. 585; State ex rel Triay v. Burr, 79 Fla. 290, 84 So. 61; State ex rel. Railroad Commissioners v. Southern Telephone & Const. Co., 65 Fla. 270, 61 So. 506; Town of Brooksville v. Florida Tel. Co., 81 Fla. 436, 88 So. 307; Southern Utilities Co. v. Palatka, 86 Fla. 583, 99 So. 236 (aff. 268 U. S. 232, 45 S. Ct. 488, 69 L. Ed. 930); Demeter Land Co. v. Public Service Co., 99 Fla. 954, 128 So. 402.

Petitioner's fourth question posed for adjudication is: Do the courts of the State of Florida, under our Constitution, have exclusive jurisdiction of all cases involving the legality of any toll? The contention is made that the power to fix a reasonable rate for the use by the public of the "Venetian Way" is vested in the courts under the Constitution and our holding in Miami Bridge Co. v. Miami Beach Ry. Co., 152 Fla.

458, 12 So. (2nd) 438. The answer to the question is that the power to make reasonable rates may be exercised directly by the Legislature or by some instrumentality of its own selection and the reasonableness of the rate as fixed by this instrumentality can or may by the courts be reviewed or inquired into when presented in an appropriate proceeding. See Miami Bridge Co. v. Miami Beach Ry. Co., *supra*; Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880; Florida Motor Lines, Inc. v. Railroad Commissioners, 100 Fla. 538, 129 So. 876; State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. 692.

Substantial portions of petitioner's fifth plea are set forth *supra*. Additional thereto it is alleged that the respondent filed in the Circuit Court of Dade County a petition seeking an adjudication of a rate recently fixed at the sum of 50 cents per round trip by the petitioner to be paid by the respondent in the use of the bridge. The objective of the suit was a decree determining the reasonableness or unreasonableness of the rate so fixed. The order of the Railroad Commission on plea five is the basis of petitioner's question five posed for adjudication, viz: Can the State Railroad Commission participate in a private controversy between a bus company for the purpose of fixing the rate to be charged by a toll bridge company for the use of busses crossing said bridge? The answer to this contention is that the Legislature of Florida, under the provisions of Section 30 of Article XVI of the Florida Constitution has the power to enact laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as a common carrier transporting persons and property or performing other service of a public nature. We have held that the Legislature, under this provision, has power to fix the rates to be paid by the public for the use of the bridge, or the power can or may be conferred on some agency. Heretofore the power to fix rates up to a maximum amount for the use of the bridge was conferred upon the Miami Bridge Company and the power was so exercised for a considerable length of time. The Legislature, in the enactment of Chapter 21743, *supra,* transferred the power to fix rates, with additional rules

and regulations, from the Miami Bridge Company to the State Railroad Commission. It has not been made to appear that the Railroad Commission is a party to the pending suit in Dade County or promulgated the rates now being litigated in said suit. It was within the power of the Legislature, under Section 30 of Article XVI, *supra,* to transfer the authority to fix rates to be paid for the use of petitioner's bridge from the Miami Bridge Company to the State Railroad Commission.

The petition of the respondent filed with the State Railroad Commission is drafted under the provisions of Chapter 21743, *supra.* The petition alleges a discrimination in the amount of rates fixed by the Miami Bridge Company to be paid by the respondent for the use of the bridge. It is to be presumed that the hearing before the State Railroad Commission will proceed according to the essential requirements of the law. If a conclusion or order is by the Commission made or reached that fails to conform to the essential requirements of the law, then the error, if any, may be corrected in an appropriate proceeding.

The petition for a writ of certiorari is hereby denied.

It is so ordered.

BUFORD, C. J., TERRELL, ADAMS and SEBRING, JJ., concur.

BROWN and THOMAS, JJ., dissent.

