373 So.2d 913 (1979)
H. MILLER & SONS, INC., Petitioner,
v.
Paula F. HAWKINS et al., Respondents.
No. 52058.
Supreme Court of Florida.
July 27, 1979.
John W. Costigan, of Madigan, Parker, Gatlin, Truett, Swedmark & Skelding, Tallahassee, for petitioner.
Leon F. Olmstead and Raymond E. Vesterby, Florida Public Service Commission, Tallahassee, and Stanley M. Danek, of Myers, Kaplan, Levinson, Kenin & Richards, Tallahassee, for Cooper City Utilities, Inc., respondents.
ADKINS, Justice.
This cause is before us on petition for writ of certiorari to the Public Service Commission. Art. V, § 3(b)(3), Fla. Const. At issue is whether the Commission can modify a private contract between a developer and a utility by increasing service availability charges after the developer has completed payment of the contractual amount for the increase in plant capacity necessitated by *914 the proposed development. U.S.Const. Art. I, § 10, Cl. 1; Art. I, § 10, Fla. Const.
Petitioner, H. Miller & Sons, Inc., is a developer operating, as is herein pertinent, in Broward County, Florida. Respondent, Cooper City Utilities, Inc., (Utility) is a private water and sewer utility located in Broward County, Florida.
In October 1972 as a response to Miller's request for utility service to its proposed 500-unit Timberlake subdivision, the Utility prepared a letter of agreement which Miller accepted. The Utility's obligation to Miller was specifically limited by the agreement to provide sufficient water and sewer plant capacity for the projected development. The Utility explicitly stated it was not responsible for water and sewer lines necessary to make the plant capacity available. In return for the plant capacity expansion, Miller agreed to pay $125,000 in service availability fees (also called plant capacity fees and connection fees) over a two-year period. The due dates for the incremental payments were predicated upon either the passage of time from execution of the agreement (one year, eighteen months, and two years) or the completion of a certain number of homes (100, 200, or 300), whichever occurred sooner. Miller completed payment in accordance with the time schedule in January 1975, by which time homes had been connected to the system.
At the time of the parties' agreement in 1972 the Utility was authorized by the Commission to charge $110 per residential unit as a combined water and sewer service availability fee. Apparently the Utility added $140 in off-site main charges to the authorized amount for the total contract price, reflecting a per-unit charge of $250 ($125,000/500). In October 1975 the Commission authorized $275 as combined water and sewer service availability charges. The Utility billed Miller at the increased rate for all subsequently connected homes. Miller paid the increase under protest and filed a complaint with the Commission which alleged that: 1) the increases were not applicable to Miller inasmuch as its contractual obligations for service availability charges were fully paid prior to the authorization of the increases; and 2) the 1972 contract price of $250 per unit was unlawful in that it exceeded the Commission-approved tariff and thus entitled Miller to a $70,000 refund.
The Commission ruled in orders 7650 and 7851 that Miller was responsible for the increased charges and that the $250 per unit contract price complied with the 1972 tariff because $140 per unit was attributable to off-site water fees; but an October 1975 increase in those off-site water fees were found to be unlawful, a refund ordered, and the Utility required to charge only the $140 per unit contract off-site water fee in the future.
The Commission's decision was based upon the well-settled principle that contracts with public utilities are made subject to the reserved authority of the state, under the police power of express statutory or constitutional authority, to modify the contract in the interest of the public welfare without unconstitutional impairment of contracts. Midland Realty Co. v. Kansas City Power & Light Co., 300 U.S. 109, 57 S.Ct. 345, 81 L.Ed. 540 (1937); City of Plantation v. Utilities Operating Co., 156 So.2d 842 (Fla. 1963); Miami Bridge Co. v. Railroad Commission, 155 Fla. 366, 20 So.2d 356 (1944). (See also 14 A.L.R. 249; 11 A.L.R. 454; 9 A.L.R. 1420; 64 Am.Jur. Public Utilities §§ 81, 83). The Commission felt, and the Utility naturally agreed, that excluding Miller from the authorized increase would be unjustly discriminatory. Furthermore, the effect of ruling in favor of Miller would have been to allow a private party to circumvent by contract the police power of the state, which is impermissible. Union Dry Goods Co. v. Georgia Public Service Commission, 248 U.S. 372, 39 S.Ct. 117, 63 L.Ed. 309, 9 A.L.R. 1420 (1919); Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828 (1908).
Miller does not dispute the validity of the general rule but argues it is inapplicable where there has been no express finding that the contract is unreasonable and adversely affects the public interest. Central Kansas Power Co. v. State Corporation *915 Commission, 181 Kan. 817, 316 P.2d 277, 286 (1957) ("contracts cannot be waived aside by mere lip service invocation of the police power"). While it is undoubtedly true that contractual agreements under constitutional protection may not be easily disregarded, such was not the case in the instant Orders. The test for specificity in Commission orders is that they contain "a succinct and sufficient statement of the ultimate facts upon which the Commission relied... ." Occidental Chemical Co. v. Mayo, 351 So.2d 336, 341 (Fla. 1977); Deel Motors, Inc. v. Dept. of Commerce, 252 So.2d 389 (Fla. 1st DCA 1971). The Commission directly addressed this issue in Order 7851. We agree with the following excerpt from that order:
We believe the plain and unequivocal mandates of Section 367.101, Florida Statutes, that service availability charges and conditions be just and reasonable, a fact too well known to require further discourse, coupled with references to "public welfare" and application of legal rates without discrimination, spell out adequately the "public interest or welfare". We do not believe there is any magic attached to the words, but such may be enunciated, without their use. Such was done in Order No. 7650.
PSC Order 7851 at 2.
Miller next contends that no competent, substantial evidence existed to support the findings of unjust discrimination and unreasonableness. Fleet Transport Co. v. Mason, 188 So.2d 294 (Fla. 1966). Also, that the Commission departed the essential requirements of the law by purporting to make such findings. In essence Miller argues that the contract was fully executed when final payment occurred in January 1975; thereafter, plant capacity for the unbuilt homes was reserved and paid for regardless of when Miller chose to connect the remaining homes. Under this theory, the time of payment was crucial, beyond which point no amount of interest in the public welfare could justify additional charges to Miller. To buttress the "time of payment" theory, Miller draws a distinction between rate contracts and the instant agreement. Rates are characterized as prospective in nature and thus clearly subject to the police power. A contract for specified plant capacity, however, is designated as a "one-shot" affair analogous to a property right and therefore nonmodifiable once full payment is made. Miller would have the utility treat unconnected houses in the same fashion as those built prior to the increase, i.e., as existing customers. Since it is perfectly reasonable for new customers to bear the burden of costs incurred by virtue of new use to the system, no discrimination would have resulted from exempting Miller from the increase. See Contractors and Builders Assoc. of Pinellas County v. City of Dunedin, 329 So.2d 314 (Fla. 1976).
In contrast to Miller's "time of payment" theory, the Utility and Commission argue it is the "time of connection" which should govern the developer's susceptibility to additional fees. Inflation increased the cost of a new plant constructed by the Utility to accommodate Miller; the extra fees were authorized to offset that expense. Furthermore, the Utility was responsible for the fixed costs of the new plant even though the plant remained idle with no income from customer connections. The Utility agrees that homes connected prior to October 1975 are not subject to the increase but would treat all houses connected after the effective date as new customers who must help bear the burden of the actual costs, in excess of sums already paid by Miller to reserve plant capacity.
Miller's distinction between rates and "one-shot" service availability contracts has merit only with reference to the houses connected before the increase. In exercising its ratemaking authority, the Commission must take into account existing facts which will affect future rates. Gulf Power Co. v. Bevis, 289 So.2d 401 (Fla. 1974). The enhanced costs of construction and continuing responsibility for fixed costs of unused plant capacity are facts which undoubtedly affect not only future rates but also future service availability charges, which are designed to prevent existing customers from *916 subsidizing new customers. The crucial time in regard to service availability charges must be the date of connection since there can be no ascertainment of the actual cost of maintaining sufficient capacity until that date. Just as rates offset the cost of service and are determined by past costs so do service availability charges offset the cost of preserving plant capacity and are determined by past costs. The Commission must have the ability to alter service availability charges to defray the expenses of preserving plant capacity with changing economic factors; otherwise the whole point of having service availability charges would be lost and existing customers would subsidize future connections.
Miller argues that had the Utility so desired, it could have insisted on a guaranteed revenue agreement to protect itself from inflation and fixed costs on idle plant capacity. See Fla. Admin. Code Rule 25-10.121(12) (1974). As stated by the Commission in Order 7650, resort to such an agreement was not necessary in light of an escalation clause incorporated by reference into the original contract from the then applicable water and sewer tariffs. We therefore approve the Commission's Orders 7851 and 7650 as valid exercises of the police power based on competent substantial evidence and within the essential requirements of the law.
It is so ordered.
ENGLAND, C.J., and BOYD and SUNDBERG, JJ., concur.
OVERTON, J., dissents.