386 So.2d 543 (1980)
The CHRISTIAN AND MISSIONARY ALLIANCE FOUNDATION, INC., d/b/a Shell Point Village, Petitioner,
v.
FLORIDA CITIES WATER COMPANY, Respondent.
No. 55161.
Supreme Court of Florida.
June 26, 1980.
Rehearing Denied August 27, 1980.
*544 Howard S. Rhoads of Allen, Knudsen, Swartz, DeBoest, Rhoads & Edwards, Fort Myers, for petitioner.
Leon F. Olmstead and Prentice P. Pruitt, Tallahassee, for Florida Public Service Commission.
John W. Costigan of Madigan, Parker, Gatlin, Swedmark & Skelding, Tallahassee, for Florida Cities Water Co.
SUNDBERG, Justice.
This is a petition for writ of certiorari to review an order of the Florida Public Service Commission (Commission) concerning the justification for certain developer water unit connection charges. We have jurisdiction.[1]
The petitioner-developer, The Christian and Missionary Alliance Foundation, Inc., owns a retirement community known as Shell Point Village in Lee County, Florida. The respondent-utility, Florida Cities Water Company (Florida Cities), is a privately-owned public utility authorized to provide water services in that area. When this community was in the planning stages, the developer arranged for water service with Florida Cities. The agreement, concluded in 1967, provided for a ten-inch water main to be extended to the front entrance of the development and a meter to be installed at that point of delivery. The developer constructs and maintains the water system past that point.
In 1975 the developer added to the development three multi-family buildings comprising 210 dwelling units. When the utility became aware of this new construction, it requested the developer to pay a one-time charge of $250 per unit for service availability to these new units, or a total sum of $52,500. The demand was based on a tariff provision granted the water utility by the Commission in its Order No. 5822, which reads in part as follows:
CONNECTION CHARGE
All applications for service at a new location shall pay, in advance, a connection charge of: $300 per residential customer with 3/4" meters, $350 per residential customer with 1" meters, $250 per *545 multiple dwelling unit as that term is defined in rate schedule MDW, and an amount that is fair and reasonable for commercial customers, but not less than $350.
The developer refused to make the requested payment. Thereafter, the utility initiated a proceeding before the Commission against the developer, resulting in an order by the Commission that the new service availability charge must be paid. The developer in these proceedings seeks relief from this order and asserts three grounds in support of its position that it should not be required to pay a service availability charge.
First, it contends that the charge applies only to new locations. Because it receives the water for new units through the same master meter used from the beginning, it believes it receives service at an existing location rather than a new location and therefore is not subject to the charge. We reject this contention. This argument may be initially appealing, but it fails to take into account additional demands that may require main plant expansion and development. If the utility is unable to charge for service availability to these new units, the developer could substantially develop Shell Point without paying for the expansion of the water system outside the development that would be necessary to supply the increased demand at the master meter. The financial burden would then be shifted to other customers of the utility contrary to section 367.101, Florida Statutes (1977). We conclude that the new units must be included in the term "new location." Service is still rendered at the meter, but this charge is for service availability and not for the service itself.
The developer's second argument relies solely upon the decision of this Court in Contractors and Builders Ass'n v. City of Dunedin, 329 So.2d 314 (Fla. 1976). The developer asserts that the service availability charge is invalid because the use of the funds generated by this charge is not limited. In City of Dunedin, we held that an ordinance setting a utility connection charge for new customers was invalid for failure to restrict in writing the disposition of the fees collected. We stated, however:
Raising expansion capital by setting connection charges, which do not exceed a pro rata share of reasonably anticipated costs of expansion, is permissible where expansion is reasonably required, if use of the money collected is limited to meeting the costs of expansion. Users "who benefit expecially [sic], not from the maintenance of the system, but by the extension of the system ... should bear the cost of that extension."
329 So.2d at 320.
The developer's reliance on City of Dunedin is misplaced because of the simple distinction between a municipal utility which is not regulated by the Commission and a private utility which is so regulated. The principle underlying City of Dunedin is that absent express limiting language in the ordinance authorizing service availability charges by the city, there is no check on the accounting for and application of the revenues for the intended purpose. These considerations are not present when dealing with a private utility regulated by the Commission.
By section 367.121(1), Florida Statutes (1977), the Commission was charged with the responsibility, inter alia, of: (a) prescribing fair and reasonable rates and charges; (b) prescribing a uniform system and classification of accounts; and (c) requiring the filing of periodic reports and all other reasonably necessary information. It was pursuant to this charge that the tariff in question was approved by the Commission. Section 367.101, Florida Statutes (1977), provided the more specific authority for the Commission to "set just and reasonable charges and conditions for service availability."
Under the auspices of this statutory authority, the Commission has established accounting regulations for treatment of service availability charge funds, and such accounting forms a basis for setting rates for water service. The private water utility is required to record all connection charges *546 in Account No. 271 (Uniform System of Accounts) as contributions in aid of construction which are thereafter deducted from the utility's investment for ratemaking purposes. Consequently, the collection of service availability charges by a private utility has the effect of reducing, or at least controlling, rates to customers. Thus the objective expressed in the Commission's order "that the new customer will bear the expense of expansion of the facilities to provide him service in order that such new customer will not be subsidized by existing customers," is met. This statutory scheme provides the regulation and accountability missing in the instance of a municipal utility and, hence, makes inapplicable the reasoning of City of Dunedin to this case.
The petitioner-developer's third argument that it has a vested right to remain connected to the water system without paying these charges is totally without merit. See H. Miller & Sons, Inc. v. Hawkins, 373 So.2d 913 (Fla. 1979).
For the reasons expressed, we hold valid the Commission's order under review.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, ALDERMAN and McDONALD, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I concur with the majority in rejecting the first and third arguments of petitioner; however, I would hold that the principles enunciated by this Court in Contractors and Builders Ass'n v. City of Dunedin, 329 So.2d 314 (Fla. 1976), should apply to private as well as publicly owned utility companies.
I dissent from the holding of the majority that the City of Dunedin applies solely to government-owned utilities. In my view, this would allow the Public Service Commission to permit service availability charge funds of private utilities to be used for maintenance and operations of private utilities while government-owned utilities must, under City of Dunedin, restrict these same funds to the cost of expansion. In my opinion, a privately owned water utility and a government-owned water utility should be treated the same and therefore subject to the same restrictions and limitations on the use of these cost-of-expansion funds. I would hold invalid the Commission's order under review for failure to provide sufficient restrictions upon the funds collected for the service availability charge and remand this cause to the Commission and allow it in subsequent proceedings to incorporate proper restrictions on the use of these revenues.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.; § 367.131, Fla. Stat. (1977).