COLBATH, WALTER N., Jr., Associate Judge.
Comprehension of the rather involved and complicated facts of this case requires introduction of two additional actors other than the appellant Cooper City (City) and appellee PCH Corp. (PCH); they are, Cooper City Utilities (Utilities) and City of Sunrise (Sunrise).
Overly simplified and broadly generalized, the facts are as follows. On June 22, 1977, PCH and Utilities entered into a Developer’s Agreement in which PCH gave Utilities the exclusive right to provide water and sewage treatment to 520 acres of land which PCH owned and was readying for development, for which PCH agreed to pay $450 per connection. The agreement was to terminate May 31, 1981, but could be extended by PCH. Successors of each party to the agreement were to be bound by its terms. In and around May 1981, PCH contacted Utilities to extend the agreement and learned that Utilities had sold out to Sunrise. PCH then contacted Sunrise and learned that it was involved in litigation with City over ownership of Utilities. PCH decided to intervene in that lawsuit to protect its interests but was persuaded by City not to do so because settlement was imminent; PCH deferred and the lawsuit settled with City becoming the new owner of Utilities. Thereafter PCH, Utilities, City and Sunrise met and negotiated, resulting in a Modified Developer’s Agreement which reaffirmed much of the original agreement and specifically reaffirmed the $450 connection fee. A condition of the settlement of the lawsuit and the Modified Developer’s Agreement was ratification of City becoming Utilities’ new owner by a referendum vote of City’s resi *845 dent voters. The referendum passed and shortly thereafter, despite the terms of the Modified Developer’s Agreement, City passed an ordinance increasing the connection fee to be charged PCH from $450 to $1,550. PCH then brought this suit against City seeking declaratory and other relief. After a lengthy trial the court below found for PCH and entered its order which (1) enjoined City from charging and collecting $1,550 per connection and (2) required City to refund all such fees paid plus legal interest thereon. It is from that order that this appeal was taken.
Unique to this case and not set forth in the facts above is that at all relevant times City was geographically divided, i.e., it contained an eastern section and a western section not connected to each other. The eastern and older portion contained an existing water and sewage treatment plant (east plant) which was close to capacity and in need of repair, which plant served the majority of City’s residents. The western and newer section housed the Utilities plant (west plant) which was relatively new and nowhere near capacity and which is the subject of this litigation.
City contends that a municipality can defray the fair share of increased capital costs for furnishing utility service to new customers by establishing a charge in excess of the contracted amount as an inherent and implicit reasonable exercise of its police powers. On the other hand, PCH contends that the increased connection fee of $1,550 imposed by City through its ordinance was (a) an unreasonable exercise of governmental authority, (b) arbitrary and discriminatory, (c) did not defray costs on a fair share pro rata basis, and (d) was an unconstitutional impairment of contract.
City sought to increase the connection charge to new users for the following reasons:
(a) To provide for expansion of the west plant to approximately double its size for future user needs due to anticipated build-out.
(b) To implement a water distribution interconnect between plants recommended by City’s consulting engineer.
(c)To implement two federal programs, i.e. the THM program for water treatment and the 201 program for sewage treatment.
Testimony of City’s consulting engineer, Mr. Humphrey, reveals that the west water plant had adequate present capacity to serve PCH land as well as other developers, but that the sewer plant probably did not. Mr. Humphrey further admitted that the THM and 201 programs would benefit both existing and new users and that existing users would not pay anything for the benefit, the sole cost being borne by new users out of the $1,550 connection fee. Mr. Humphrey stated that although the estimated combined costs of those two programs were over nine million dollars at the time of his study, the estimated costs at the time of trial were slightly over four million. There was also evidence that the cost of these programs could be defrayed by federal grant moneys and possibly through a future bond issue.
Another witness, Mr. Lukin, an engineer with Utilities at the time the original Developer’s Agreement was entered into, testified that he designed the Utilities plant with adequate capacity to serve both PCH land and that of another developer and that the $450 connection fee would fully reimburse the owner for its capital investment. In addition, he testified that no expansion was necessary to serve PCH.
In the instant case it appears that the parties agree on the legal principles involved but disagree on their application to the facts. In Contractors and Builders Association of Pinellas County v. City of Dunedin, 329 So.2d 314, 317, 318 (Fla.1976), appeal after remand, 358 So.2d 846 (Fla. 2d DCA 1978), cert. denied, 444 U.S. 867, 100 S.Ct. 140, 62 L.Ed.2d 91 (1979), the Florida Supreme Court found that in principle there is “nothing wrong with transferring to the new. user of a municipally owned water and sewer system a fair share of the costs new use of the system involves.” The court concluded that an ordi *846 nance to raise moneys to expand a water and sewer system to meet increased demand, thereby shifting to the new user such expense, was clearly proper. The Dunedin court went on to state, “The cost of new facilities should be borne by new users to the extent new use requires new facilities, but only to that extent.” Id. at 321. (Emphasis supplied.)
City in its brief states the primary issue on appeal as follows:
Whether a municipality can defray the fair share of the increased capital costs for furnishing utility service to new development by establishing a contribution charge in excess of the amount identified in a pre-existing developer agreement which is inherently and implicitly subject to the reasonable exercise of police powers?
City contends that this question must be answered in the affirmative and in support thereof relies on H. Miller & Sons v. Hawkins, 373 So.2d 913 (Fla.1979). The facts in H. Miller are somewhat similar to the case at bar wherein a utility agreed to construct a new plant to accommodate Miller’s projected new development and Miller agreed to pay a $250 connection fee per unit. Three years later the Public Service Commission authorized a $275 connection fee and thereafter the utility billed Miller at the increased rate and Miller protested. The Commission ruled in favor of the utility and the supreme court agreed, stating,
The Commission’s decision was based upon the well-settled principle that contracts with public utilities are made subject to the reserved authority of the state, under the police power of express statutory or constitutional authority, to modify the contract in the interest of the public welfare without unconstitutional impairment of contracts.
Id. at 914.
H. Miller, however,' is distinguishable from our case in that in H. Miller “[ijnflation increased the cost of a new plant constructed by the utility to accommodate Miller; the extra fees were authorized to offset that expense.” Id. at 915. In the case at bar the costs of the changes in the water/sewer system anticipated by City upon which it based the $1,550 connection fee were not needed “to accommodate” PCH.
If we were to accept City’s hypothesis as set forth above as the primary issue, then its conclusion is logical. However, it is the very hypothesis (i.e., the statement of the issue) with which we take issue.
PCH does not quarrel with the holding in H. Miller and agrees that the principle against impairment of contract is limited by the reasonable exercise of police power. PCH, however, insists that in the present case the purported exercise of this power was unreasonable; we are constrained to agree. A municipality may not change a rate set in a contract between the parties by ordinance without showing that the new rate change is reasonable. Absent any allegation or proof that municipal water rates established by contract are unreasonable, the rates will be presumed to be reasonable. City of North Miami Beach v. Southern Gulf Utilities, Inc., 339 So.2d 173 (Fla.1976).
Therefore, as we see it, the issue here is better stated as follows.
Whether the water and sewer connection fees imposed by City’s ordinance are invalid because such fees are unreasonable and therefore invalid because they arbitrarily discriminate against new users in favor of existing users.
As can be seen from the facts stated above, existing users would derive benefit from the THM and 201 plans and through the proposed interconnect between the east and the west plants. In addition no expansion of the west plant was needed to accommodate PCH. The cost of all of this was to be borne entirely by the $1,550 connection fee charged to new users with no cost to existing users. City did not apportion the cost on a fair share pro rata basis which we feel results in a windfall to existing users. This it cannot do as it constitutes an unreasonable exercise of governmental authority, does not defray cost on a fair share pro rata basis, and as such is an unconstitutional impairment of contract.
*847 Three sub-issues under point number one raised by. the appellant not disposed of above are as follows:
Did the trial court err in ruling that
(a) the Modified Developer’s Agreement is ineffective as to other plaintiffs who succeeded as new owners to a portion of PCH’s interest,
(b) City is estopped to enforce its ordinance against PCH, and
(c) City is enjoined from enforcing other portions of its ordinance not involving the connection fee?
As to all three of these sub-issues we find no error by the trial court. Firstly, the Developer’s Agreement and the Modified Developer’s Agreement clearly state that they are binding on each party’s successor in interest and also that Utilities’ agreement to provide water and sewage services was a covenant running with the land. Therefore, the Modified Developer’s Agreement applied to all plaintiffs whether PCH or buyers from PCH. Secondly, the doctrine of equitable estoppel may be invoked against a municipality as if it were an individual. Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10, 15 (Fla.1976). Finally, since the Modified Developer’s Agreement provided that the $450 connection charge would be the “sole charges” for connections we conclude that City could not charge “fees and payments which are otherwise related to connections” and in excess of the $450 connection fee.
We turn now to the two remaining major points on appeal, to wit: whether it is reversible error to allow an expert witness to render an opinion on an ultimate legal issue and whether appellant, a municipality, enjoys sovereign immunity from liability from prejudgment interest on ordered refunds.
Despite the wording of section 90.-703, Florida Statutes (1985), which allows opinion on “an ultimate issue,” opinions on ultimate “legal” issues would seem to be inadmissible. Town of Palm Beach v. Palm Beach County, 460 So.2d 879 (Fla.1984). Here the opinion sought from PCH’s expert was whether the contribution charges imposed on new users by City’s ordinance was in accordance with generally accepted regulatory principles and standards. Such opinion does not seem to us to be much different from one involving generally accepted accounting principles, which opinion is clearly admissible under the Florida Evidence Code. However, even if such an opinion does transcend to an ultimate “legal” issue we find, that in light of all the foregoing, the error, if any, is harmless.
Finally, City argues that a municipality enjoys sovereign immunity from interest. In Broward County v. Sattler, 400 So.2d 1031 (Fla. 4th DCA 1981), we held that this immunity may be waived. Sattler also held that interest, if due, is due at the legal rate from the date the debt is due. Accordingly, and on the strength of Satt-ler, we hold that the trial court award of prejudgment interest against City was proper.
We conclude that appellant has failed to demonstrate any reversible error, and accordingly hold that the judgment of the lower court is
AFFIRMED.
DELL and GUNTHER, JJ., concur.