793 So.2d 1174 (2001)
FLORIDA POWER CORPORATION, Appellant,
v.
CITY OF CASSELBERRY, Florida, etc., Appellee.
No. 5D00-3551.
District Court of Appeal of Florida, Fifth District.
September 14, 2001.
*1176 Sylvia H. Walbot, Robert W. Pass, Joseph H. Lang, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, and R. Alexander Glenn, St. Petersburg, for Appellant.
Gordon H. Harris, Thomas A. Cloud, Tracy A. Marshall, George N. Meros, Jr., of Gray, Harris & Robinson, P.A., Orlando, for Appellee.
PETERSON, J.
Florida Power Corp. (FPC), appeals an order compelling it to arbitrate with the City of Casselberry in order to determine the purchase price of FPC's distribution lines located within the city limits. Casselberry claims that it is entitled to purchase the lines under a 1971 franchise agreement, the terms of which are totally encompassed in an ordinance containing three pages of text.
Casselberry and FPC entered into a thirty-year franchise agreement in 1958 (1958 franchise) also encompassed in a franchise ordinance. The 1958 franchise allowed FPC to install and maintain electrical distribution and transmission equipment on the public right of way within the city limits. The ordinances prohibited Casselberry from engaging in the business of selling or distributing electricity and required FPC to pay Casselberry franchise fees. Upon termination of the franchise agreement, Casselberry had the option of purchasing FPC's distribution facilities within the city limits. The purchase option was mandated by section 167.22, Florida Statutes (1941), which provided that the valuation of FPC's assets was to be set by "arbitration as may be provided by general law." If Casselberry decided not to exercise the purchase option, the 1958 franchise provided that Casselberry would extend the term of the franchise.
In 1971, FPC and Casselberry agreed upon the terms of an ordinance to replace the 1958 franchise. The replacement ordinance (1971 franchise), became effective on *1177 April 12, 1971 and expired on April 12, 2001.[1] The 1971 franchise was essentially the same as the 1958 franchise but it did not contain a non-compete agreement and did not commit Casselberry to extend the franchise if the City decided against exercising the purchase option. In 1973, the Florida Legislature repealed Chapter 167, Florida Statutes which required all franchise agreements to contain buyout provisions and terminate within thirty years. See Ch. 73-129, Laws of Florida.[2]
As the expiration date of the 1971 franchise became imminent, negotiations between Casselberry and FPC began but they failed to agree upon the terms of a third franchise. Casselberry then informed FPC that it intended to exercise its right to arbitrate the purchase price of FPC's electrical distribution facilities so that it could determine whether a purchase was feasible. In response, FPC denied the validity of the purchase option. Casselberry then filed a complaint for declaratory judgment seeking a determination of its rights under the 1971 franchise and also requested an order compelling FPC to submit to arbitration. FPC answered arguing that the 1973 repeal of Chapter 167 invalidated the buyout option and that the court had no jurisdiction to hear the matter because the Public Service Commission (PSC) had exclusive jurisdiction regarding matters of rates, service, and territorial disputes involving electric utilities.
The trial court entered an order compelling FPC to submit to arbitration to determine the value of its assets subject to purchase under the 1971 franchise and require the arbitrators to determine a price within 90 days of the entry of the order. FPC appeals that order.
FPC maintains that there are many obstacles to Casselberry's operation of an electrical distribution system within its city limits, the main one being that the PSC has exclusive jurisdiction over matters of rates, service and territorial disputes involving electrical utilities and that the Federal Energy Regulatory Commission (FERC) now exists which also would have jurisdiction over Casselberry's operations. It is indisputable that Casselberry will not be able to operate its own utility system without integrating its system within and being subject to regulation of a comprehensive system designed to serve the public with electrical energy. But those complex matters are reserved for another day and are prematurely raised in this appeal. The sole issue today is whether Casselberry is entitled to enforcement of a provision allowing it to seek the determination of a purchase price through arbitration.
*1178 Rule 9.130(a)(3)(C)(v) of the Florida Rules of Appellate Procedure provides that the court may hear an appeal from a nonfinal order that determines "the entitlement of a party to arbitration." See Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999), reh'g denied, (Oct. 21, 1999), rev. denied, 763 So.2d 1044 (Fla. 2000) (citations omitted). The general standard of review in declaratory judgment actions is set forth in Williams v. General Insurance Co., 468 So.2d 1033, 1034 (Fla. 3d DCA 1985), where the court stated that "the trial court's decision in a declaratory judgment action is accorded a presumption of correctness...." Here, however, the Court is asked to review the trial court's interpretation of a contract which is a matter of law. See Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993); see also Leseke v. Nutaro, 567 So.2d 949 (Fla. 4th DCA 1990) (the interpretation or construction of a contract is a matter of law, not one of fact, and an appellate court is not restricted in its ability to interpret a written agreement). A decision construing a contract presents an issue of law that is subject to review on appeal by the de novo standard of review. See Inter-Active Servs., Inc. v. Heathrow Master Ass'n, Inc., 721 So.2d 433 (Fla. 5th DCA 1998).
Citing H. Miller & Sons, Inc. v. Hawkins, 373 So.2d 913, 914 (Fla.1979) as support, FPC argues that the repeal of Chapter 167 amended its contract with Casselberry by nullifying the previously mandatory buyout provision which included a valuation of assets by arbitration. H. Miller held that PSC decisions that change the provisions of a contract between a private entity and a public utility which affect rates charged to customers constituted a valid exercise of police power. "Contracts with public utilities are made subject to the reserved authority of the state, under the police power of express statutory or constitutional authority, to modify the contract in the interest of the public welfare without unconstitutional impairment of contract." Id. (citations omitted).
While the PSC can amend private contracts in some circumstances, FPC's arguments are inapplicable in the instant case. The PSC has not intervened in this action nor has the PSC been asked to approve rates, service, or territorial agreements. Moreover, the PSC has no jurisdiction over Casselberry at this time. Therefore, the trial court has proper jurisdiction of this case until such time as Casselberry becomes a retail electric utility or exercises its purchase option. See Fla. Stat. § 366.04(2); see also id. Ch. 166.
Arbitration provisions are generally favored by the courts; however, because arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation. See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (citations omitted); see also R.W. Roberts Constr. Co., Inc. v. St. Johns River Water Management Dist. for Use and Ben. of McDonald Elec., 423 So.2d 630, 632 (Fla. 5th DCA 1982). Accordingly, the determination of whether an arbitration clause requires arbitration of a particular dispute necessarily "rests on the intent of the parties." Id.; see also Regency Group, Inc. v. McDaniels, 647 So.2d 192, 193 (Fla. 1st DCA 1994). "The general rule is that where an arbitration agreement exists between the parties, arbitration is required only of those controversies or disputes which the parties have agreed to submit to arbitration." Miller v. Roberts, 682 So.2d 691, 692 (Fla. 5th DCA 1996). Under both federal statutory provisions and Florida's Arbitration Code, there are three elements for courts *1179 to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. See Seifert, 750 So.2d at 636; Terminix Int'l Co., L.P. v. Ponzio, 693 So.2d 104, 106 (Fla. 5th DCA 1997). Considering these three elements, it seems clear that Casselberry is entitled to arbitrate the valuation.
Although the states may not impose special limitations on the use of arbitration clauses, the validity of an arbitration clause is nevertheless an issue of state contract law. See Powertel, 743 So.2d at 574. An arbitration clause can be invalidated on such grounds as exist "at law or in equity for the revocation of a contract." Id. (citations omitted). Thus, an arbitration clause can be defeated by any defense existing under the state law of contracts, such as fraud, duress, or unconscionability. See id. These defenses may be applied to invalidate arbitration agreements without contravening the Federal Arbitration Act. See id. (citations omitted). Chapter 682, Florida Statutes, the "Florida Arbitration Code," applies in such cases only to the extent that it is not in conflict with federal law. See id. (citing Shearson/Lehman Bros., Inc. v. Ordonez, 497 So.2d 703 (Fla. 4th DCA 1986); Old Dominion Ins. Co. v. Dependable Reins. Co. Ltd., 472 So.2d 1365 (Fla. 1st DCA 1985)).
FPC has indirectly raised the defense of duress in its allegation that the arbitration clause was included as a requirement of the section 167.22. The inclusion of this provision in any franchise contract was mandatory. See Op. Att'y Gen. 056-191 (Fla. July 2, 1956). Franchises entered into by municipalities are "generally governed by the same rules and subject to the same restrictions and governmental supervision as any corporation engaged in the same or similar business." See Op. Att'y Gen. 078-43 (Fla. Mar. 8, 1978). The laws that exist at the time and place of the making of the contract become a part of it. See id. Once accepted, the franchise agreement is irrevocable unless the agreement "expressly reserves" the right of revocation. See id. Both the language of the franchise, section 167.22, and Attorney General Opinion 056-191 (Fla. July 2, 1956) mandated that a utility submit to selling to a franchisor at the expiration of a thirty-year franchise term and that, upon failure to agree upon a price, the price would be determined by arbitration. Thus, section 167.22 became a part of the irrevocable franchise agreement once it was adopted by Casselberry and accepted by FPC, and the parties' intent to submit to arbitration is irrelevant. Neither FPC nor Casselberry attempted to modify the 1971 franchise after chapter 167 was repealed. Neither sought recission of the franchise; contrarily, each performed its obligations under the franchise. Therefore, both parties are now estopped from arguing the invalidity of the arbitration clause because they both accepted benefits from the 1971 franchise. See Head v. Lane, 495 So.2d 821, 824 (Fla. 4th DCA 1986).
Valuation of a claim or valuation of assets is an arbitrable issue. See City of Paducah v. Kentucky Util. Co., 264 S.W.2d 848, 854 (Ky.1953) (city proceeding under the so-called TVA Act, KRS 96.550 to 96.900, to acquire an electric system within its boundaries has the right to have the price determined by appraisal under the provisions of the franchise ordinance); see also Paneson v. Paneson, 723 So.2d 385 (Fla. 2d DCA 1999) (arbitrators determined value of marital assets); Goldman v. Chang, 622 So.2d 30 (Fla. 3d DCA 1993) (arbitrators determined value of stock). The 1971 franchise provided that the parties would submit to arbitration on the sole *1180 issue of the valuation of FPC distribution assets located within the city limits of Casselberry. This is precisely what Casselberry seeks to have arbitrated and it has the right to have the price determined by appraisal under the provisions of the franchise ordinance.
FPC claims that arbitrators who are unfamiliar with electric utility asset valuation may be selected, and as a result, its assets will be undervalued and issues relevant to valuations such as stranded costs will be overlooked. Citing sections 682.13 and 682.14 as support, FPC contends that once an award is made, it will be difficult if not impossible to modify or vacate the award. This, FPC argues, violates its due process rights. Section 682.04 provides for appointment of arbitrator(s) as stated in the agreement and if no selection method is provided in the agreement, or the parties cannot agree on an arbitrator(s), then the court "shall appoint one or more arbitrators...." In ordering the parties to arbitration, the court gave the parties twenty days to agree on one or more arbitrators. Should the parties fail to agree, the court indicated that it would make the selection. Although modifying or vacating an award is not an easy task, this does not lead to violation of due process since the selection of competent arbitrators who understand the issues at stake is initially within the control of both FPC and Casselberry. If the parties cannot agree, there should be no doubt that the names of competent appraisers will be submitted to the court by the parties and once the appraisal is made, the parties will be afforded an opportunity by the court to object or critique the appraisal reports.
FPC next argues that because Chapter 682 lacks any valuation standards and the Legislative process under the repealed Chapter 167 failed to enact any process for valuating assets, arbitration to determine the value of FPC's distribution facilities would violate due process. Contrary to FPC's assertions, nothing in section 167.22, indicates that the Legislature intended to enact valuation standards or arbitration statutes in addition to Chapter 682 in order to value the assets of electric utilities. Notwithstanding the fact that Chapter 682 does not have any provisions for valuating an electric company's assets, standards do exist upon which arbitrators can rely in making their determination. When the PSC has been asked to approve the sale of electric company assets and/or transfers of customers from one electric utility to another and the resulting new rates, the PSC has allowed replacement cost less depreciation for physical assets, going concern values, (determined by the PSC to be an amount recoverable by the public utility for a prudent investment), and other items which are normally included in valuations of electric utility assets. See generally In Re: Petition for Approval of Sale of Facilities and Transfer of Customers from Glades Elec. Coop., Inc. to Florida Power Corp., 1997 WL 670889 (Fla.P.S.C.1997); Re: Florida Power Corp., 1992 WL 457462 (Fla.P.S.C. 1992). These other items might include stranded costs or required capital expenditures made during the time needed for PSC and FERC approval. Moreover, a similar standard is applied when a municipality takes electric utility assets by eminent domain. See Fla. Stat. § 73.0715 (2000) (listing this as the standard value to be determined by a jury in eminent domain proceedings where a city purchases electric utility property). Therefore, FPC should seek both arbitrators familiar with electric company assets and experts in valuation, including going concern value, and any other items which would affect the value of its distribution facilities. Hence, the trial court did not err in ordering arbitration and FPC's due process argument must fail.
*1181 We affirm the order of the trial court compelling arbitration to determine the value of FPC's distribution facilities.[3]
AFFIRMED.
THOMPSON, C.J., and COBB, J., concur.
NOTES
[1] Section 5 of the 1971 franchise states:

At and after the expiration of this franchise, Grantor shall have the right to purchase the electric plant and facilities of Grantee located within the corporate limits of Grantor which are used under or in connection with this franchise or right, at a valuation of the property desired, real and personal, which valuation shall be fixed by arbitration as may be provided by law. Excepted from this reservation are power plants and high tension transmission lines owned by the Corporation and connected with its general system of distribution and used for the purposes of serving communities other than the Grantor herein. As a condition precedent to the taking effect of this franchise grant, Grantee shall give and grant to the Grantor the right to purchase herein so reserved. Grantee shall be deemed to have given and granted such right of purchase and satisfied this condition precedent by its acceptance of this franchise.
[2] The 1973 repeal was a recognition of the constitutional home rule powers granted to municipalities by the 1968 revision to the Constitution of the State of Florida, not a restriction on the municipalities' powers. See Op. Att'y Gen. Fla. 078-43 (Fla. Mar. 8, 1978).
[3] We are tempted to remand for a determination of the responsibility for the costs of arbitration in the event Casselberry does not purchase the distribution system after proceeding with the exercise of valuation through arbitration or in the event it does exercise its purchase option. Because the matter will return to the trial court for further proceedings after the valuation, we leave that matter for equitable determination during the post arbitration proceedings.