821 So.2d 431 (2002)
G.E.L. RECYCLING, INC., Appellant,
v.
ATLANTIC ENVIRONMENTAL, INC., Appellee.
No. 5D01-3655.
District Court of Appeal of Florida, Fifth District.
July 19, 2002.
*432 Dennis Wells of Webb, Wells & Williams, P.A., Altamonte Springs, for Appellant.
C. Holt Smith, III, Jacksonville, for Appellee.
PALMER, J.
G.E.L. Recycling, Inc. appeals the trial court's final order entering summary judgment in favor of Atlantic Environmental, Inc. and rejecting G.E.L.'s claim for payment due for work completed on a construction project. Concluding that the parties' contract does not contain a clear and unambiguous "pay when paid" clause, we reverse.
G.E.L. filed suit against Atlantic Environmental alleging claims of breach of contract. The complaint explained that the parties had executed two contracts pursuant to which G.E.L. agreed to collect, process, store and recycle debris for Atlantic Environmental and, in exchange, Atlantic Environmental agreed to render payment for such services. The complaint alleged that G.E.L. provided all of the services agreed upon under the terms of the contracts but that Atlantic Environmental had failed to remit more than $70,000 for said services. In the part relevant to the instant appeal, paragraph seven of the parties' contract set forth the following payment term:
Payments will be made for the value of the work installed each week within 7 business days after receipt of payment from the owner.
Atlantic Environmental answered the complaint by generally denying liability and asserting several affirmative defenses including the defense that G.E.L. had agreed that the obligation of payment was contingent upon Atlantic Environmental first being paid by the owner and that since such payment had not yet been received, Atlantic Environmental was not yet obligated to make any payments to G.E.L.
Atlantic Environmental thereafter filed a motion for summary judgment arguing that entry of judgment in its favor was warranted because, pursuant to the express terms of the parties' contracts, the parties had shifted the risk of non-payment by the owner to G.E.L. More specifically, Atlantic Environmental maintained that the parties had agreed that Atlantic Environmental would not be liable to G.E.L. for payment under the parties' contracts until such payment was received by Atlantic Environmental from the owner and therefore no breach of contract had occurred since Atlantic Environmental had not yet received such payment. The trial court entered judgment in favor of Atlantic Environmental, finding that as a matter of law there was no breach of contract. In so ruling, the court stated that
the written contracts between the parties are unambiguous and each provides that payment to Defendant, Atlantic Environmental, Inc. from the owner is a condition precedent to Defendant's obligation *433 to pay the Plaintiff, which payment by the owner has not been made to the Defendant....
This appeal timely followed.
G.E.L. argues that the trial court erred, as a matter of law, in construing the contract as containing a valid "pay when paid" clause. We agree.
In Peacock Constr. Co., Inc. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla.1977), the Supreme Court held that as a general rule the interpretation of contract provisions relative to time and conditions of payment between a contractor and subcontractor is a question of law. Accordingly, the trial court's holding in this case is subject to a de novo standard of review. See also Florida Power Corp. v. City of Casselberry, 793 So.2d 1174, 1178 (Fla. 5th DCA 2001).
In Peacock, our Supreme Court specifically addressed situations like this one where parties are involved in litigation relating to a subcontractor's claim for payment due for work completed on a construction project when the general contractor has refused to remit payment because it has not yet received payment from the owner. The Court discussed the issue as follows:
That intent in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor's duty to pay the subcontractors. This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner's failure to pay the general contractor. And this is the reason for the majority view in this country, which we now join. Our decision to require judicial interpretation of ambiguous provisions for final payment in subcontracts in favor of subcontractors should not be regarded as anti-general contractor. It is simply a recognition that this is the fairest way to deal with the problem. There is nothing in this opinion, however, to prevent parties to these contracts from shifting the risk of payment failure by the owner to the subcontractor. But in order to make such a shift the contract must unambiguously express that intention. And the burden of clear expression is on the general contractor.
Id. at 842-43 (footnote omitted). Accord DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427 (Fla.1990)(stating that Peacock clearly holds that risk-shifting provisions are susceptible to only two possible interpretations: if the provision is clear and unambiguous, it is interpreted as setting a condition precedent to the general contractor's obligation to pay but, if the provision is ambiguous, it is interpreted as fixing a reasonable time for the general contractor to pay; the burden of clear expression is on the general contractor); OBS Co., Inc. v. Pace Constr. Corp., 558 So.2d 404 (Fla.1990)(holding that once the court determines that an ambiguity exists, such ambiguity must be resolved against the general contractor; when the intent to shift the risk of nonpayment is not clearly expressed, the payment provision must be interpreted as establishing a reasonable time to pay by the contractor rather than creating a condition precedent to the contractor's obligation to pay the subcontractor); Aetna Cas. & Sur. Co. v. Warren Bros. Co., 355 So.2d 785 (Fla.1978) (emphasizing that, when the intent to shift the risk of nonpayment is not clearly expressed, the payment provision must be interpreted as establishing a reasonable time to pay by the contractor rather than creating a condition precedent to the contractor's obligation to pay the subcontractor).
*434 Applying this analysis to the facts presented, the Peacock Court held that the parties' contractual language which provided that final payment would be made to the subcontractors
within 30 days after the completion of the work included in this sub-contract, written acceptance by the Architect and full payment therefor by the Owner
was susceptible to two interpretations; namely, (1) as setting a condition precedent to payment, or (2) as fixing a reasonable time for payment. As such, the contractual language was found to be ambiguous and thus insufficient to shift the risk of payment failure by the owner to the subcontractor.
In the instant case, paragraph seven of the parties' contract is substantially equivalent to the contract language in Peacock, and, therefore, the same result is required.
REVERSED and REMANDED.
COBB and ORFINGER, R.B., JJ., concur.