GRIMES, Judge.
This case involves the question of whether jurisdiction to pass upon the subject matter of the suit rests in the circuit court or in the Public Service Commission.
In 1965, Dixie Gardens, Incorporated, as the developer, entered into a contract with Crestridge Utilities Corporation whereby Crestridge was granted the exclusive right to provide water service to the property in Crestridge Gardens Subdivision for a period of thirty years. The two corporations were related at least to the extent that the same persons signed the contract as corporate officers of both parties. After specifying that Crestridge should lay and maintain water lines within the described property, the contract stated in part:
“ . . . The Contractor shall have the exclusive right to supply the water to all lots and it shall be entitled to receive a minimum of Five and No/100 ($5.00) Dollars per month for such service, which will entitle each lot owner the right to a reasonable use of water, it being understood that if any lot owner or an occupant shall consistently insist on using an excess amount of water and cause waste that the Contractor shall have the right to shut-off the water until definite agreement is obtained that the use of said water will be limited to reasonable use. This provision is in the interest of the public health and safety. Said monthly charge of Five and No/100 ($5.00) Dollars shall remain in effect on all lots which once is occupied by a home. If any lot owner or occupant wastes or uses water in excess the Contractor shall have the right to install a meter on said lot and charge on a metered basis with charges commensurate with other charges in the same general vicinity.”
The provision quoted above was restated as a part of the Crestridge Gardens restrictions which were recorded as covenants running with the land. In early 1970, Crestridge installed meters on all of the houses of homeowners in Crestridge Gardens Subdivision and began imposing charges for water service on a metered basis in excess of $5.00 per month.
The plaintiff s/appellants brought a class action seeking damages for breach of contract on behalf of themselves and all other homeowners in Crestridge Gardens Subdivision alleging that since none of the homeowners were wasting water, Crest-ridge was in violation of its contract by making monthly charges for water which averaged $12.00 per homeowner. As one of its defenses, Crestridge asserted that jurisdiction of this matter rested solely with the Public Service Commission, because on March 8, 1973, it had received a water certificate from that body after the Board of County Commissioners of Pasco County had adopted a resolution which made the provisions of the Water and Sewer Regulatory Law effective in Pasco County. The court entered a summary judgment for Crestridge on the basis that the Public Service Commission had exclusive jurisdiction of the issues raised in the pending litigation.[1]
At the outset it should be noted that this is not the first dispute Crestridge has had with a property owner over rates for utility services. In Sloane v. Dixie Gardens, Inc., Fla.App.2d, 1973, 278 So.2d 309, this court considered the effect of the action of Crestridge in charging $2.25 per month for garbage collection when the contract be *157 tween Crestridge and Dixie Gardens, Inc. provided for a fee of $1.75 per month. This court directed the trial judge to determine upon what authority Crestridge sought to make a charge in excess of the contract price. While the posture of that case was somewhat different, the following portion of this court’s opinion may bear on the instant case:
“The basic question is whether developers of property can provide for the furnishing of essential services and bind the owners of lots to pay for them. We think they can. We find no contravention of public policy in the agreement. Sloane’s argument that it constitutes a monopoly void as against public policy is without merit. Garbage collection is essential to a well-run community, and may be treated as an exclusive franchise just as the furnishing of telephone service and electric power are.
“We point out that the present litigation involves relationships' between private persons and a local utility corporation associated with the developer of the land. We are not called upon to determine the right of public authority to regulate or supersede the service . . . . ”
As a result of the Pasco County Commission resolution and the Public Service Commission order granting the water certificate, the operation of Crest-ridge’s water service is now clearly under the jurisdiction of the Public Service Commission. Fla.Stat. § 367.171 (1973).[2] Thus, Crestridge argues that the issuance of the water certificate was tantamount to the approval of the water rates which were being charged when the certificate was issued. On the other hand, the plaintiffs contend that the courts rather than the Public Service Commission have jurisdiction since the plaintiffs’ claims are for breach of contract. In support of their position they point to Fla.Stat. § 367.011(4) (1973) which provides that Chapter 367 (the Water and Sewer Regulatory Law) “shall not impair or take away vested rights other than procedural rights or benefits.” •
The Supreme Court in Miami Bridge Co. v. Railroad Commission, 1944, 155 Fla. 366, 20 So.2d 356, stated:
“The State as an attribute of sovereignty is endowed with inherent power to regulate the rates to be charged by a public utility for its products or service. Contracts by public service corporations for their services or products, because of the interest of the public therein, are not to be classed with personal and private contracts, the impairment of which is forbidden by constitutional provisions. 16 C.J.S. Constitutional Law, pp. 766-773, § 327.”
Therefore, despite the fact that Crestridge had a pre-existing contract concerning its rates, now that Crestridge is under the jurisdiction of the Public Service Commission, these rates may be ordered changed by that body. The Public Service Commission has authority to raise as well as lower rates established by a pre-existing contract when deemed necessary in the public interest. State v. Burr, 1920, 79 Fla. 290, 84 So. 61.
As the criterion for setting the rates, Fla.Stat. § 367.081(2) (1973) provides:
“(2) The commission shall, after notice and hearing, either upon request or upon its own motion, fix rates which are just, reasonable, compensatory, and not unjustly discriminatory. In all such proceedings, the commission shall consider the value and quality of the service and the cost of providing the service, which shall include, but not be limited to, debt interest, the utility’s requirements for *158 working capital, maintenance, depreciation, tax and operating expenses incurred in the operation of all property used and useful in the public service, and a fair return on the utility’s investment in property used and useful in the public service. The commission shall also consider the utility’s investment in property required by duly authorized governmental authority to be constructed in the public interest within a reasonable time in the future, not to exceed twenty-four months.”
Therefore, it would appear that the Commission would not even be authorized to take into consideration the pre-existing contract in its determination of reasonable rates. However, the question we must decide is whether the trial court had jurisdiction to determine whether Crestridge breached its contract when it raised the rates.
Because of this court’s concern that our opinion might affect the jurisdiction of the Florida Public Service Commission, an order was entered affording the Commission an opportunity to express its views through the filing of an amicus curiae brief. The Commission chose to file such a brief in which it stated that its issuance of the water certificate to Crestridge did not constitute the setting of rates. The Commission asserts that it merely approved what it believed to be the rates which were being charged and collected on the jurisdictional date. Fla.Stat. § 367.171 (1973) lends support to this view because it indicates that once a county commission has resolved to come within the provisions of the chapter, any utility then engaged in the operation of a water system can receive a certificate by filing an application together with a map of its existing system, a description of the area served and the appropriate fee. Thus, it appears that there has been no rate hearing as contemplated by Fla.Stat. § 367.081 (1973).
In its brief, the Commission also states that it does not have jurisdiction to determine the legality of an increase which took place prior to its jurisdictional date but concludes with this statement:
“If, however, a court of competent jurisdiction were to find that the rates being charged and collected on the jurisdictional date were unlawful because they were in violation of a presidential freeze, contract, deed restriction, municipal ordinance, or county regulatory law, we do not believe such rate can lawfully be grandfathered in.”
The plaintiffs are entitled to an adjudication of whether Crestridge breached its contract by going to the higher rates. This can only be accomplished in a court of law. Cf. State ex rel. McKenzie v. Willis, Fla.1975, 310 So.2d 1. Accordingly, the summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
BOARDMAN, Acting C. J., and SCHEB, J., concur.

. Since it was not raised below, this court expresses no opinion at this time on whether the case should have been transferred to the county court pursuant to RCP 1.060 on the premise that no claim of any single homeowner exceeded the minimum amount necessary for circuit court jurisdiction. See Curtis Publishing Company v. Bader, Fla.App.3d, 1972, 266 So.2d 78.

. All statutory citations in this opinion shall refer to the latest edition of Florida Statutes since the relevant portions of the statutes in question have remained unchanged at all times pertinent to the decision,