402 So.2d 1225 (1981)
WINTER SPRINGS DEVELOPMENT CORPORATION, etc., Appellants,
v.
FLORIDA POWER CORPORATION, etc., Appellee.
No. 80-547.
District Court of Appeal of Florida, Fifth District.
July 29, 1981.
Rehearing Denied September 2, 1981.
*1226 Albert R. Cook and Michael D. Jones of Jones, Morrison & Stalnaker, P.A., Altamonte Springs, for appellants.
*1227 Robert W. Pass, J. Brent Walker and A. Broaddus Livingston of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa; S.A. Brandimore and R.W. Neiser, St. Petersburg, for appellee.
COWART, Judge.
In 1971 the Florida Public Service Commission adopted rules requiring power companies to calculate the cost differential, if any, of underground service compared to overhead distribution and restructured rates to cause[1] any amount by which the cost of underground service exceeded that of overhead service to be charged to subdivision developers. Appellee Florida Power Corporation had no cost differential and no underground charge until 1974 when a cost differential appeared and, effective January 15, 1975, the Commission approved Florida Power's application to charge a differential.
Winter Springs Development sued Florida Power, alleging that on or about December, 1972, the parties entered into a contract wherein Florida Power agreed to install underground service at no cost in a large subdivision being developed by Winter Springs. The complaint further alleged that Winter Springs had performed all of its obligations under the contract relating to certain clearing and staking and the payment of a certain sum of money for street lights and extra long service runs, but that Florida Power had breached the contract by failing, neglecting or refusing to install a portion of the underground service agreed to be installed until after January 15, 1975. Florida Power answered, alleged certain affirmative defenses, and moved for summary judgment on the following four grounds:
(1) This action was barred by the statute of frauds, section 725.01, Florida Statutes (1977), because the alleged contract was not to be performed within one year and was not in writing signed by Florida Power.
(2) Winter Springs had failed to exhaust its administrative remedies before filing this action.
(3) Florida Power's performance of the alleged contract was prevented by "supervening governmental activity."
(4) As Winter Springs was not a corporate entity at the time of the alleged contract it could not enter into a contract.
The trial court entered summary judgment for Florida Power. Winter Springs appeals. We reverse.
Summary judgment for Florida Power was improper because there were genuine issues as to facts which were material to the issues framed by the pleadings. First, all facts relating to the existence and terms of the contract between the parties, especially those expressed or implied terms relating to the time within which Florida Power was to have performed its obligations under the contract as alleged, were at issue. These facts are material both to the applicability of the statute of frauds and, if a contract is established, as to whether Florida Power could have performed under the contract, partially or completely, on or before January 15, 1975, the date of the claimed "supervening governmental activity." Second, there were questions as to the existence of written memoranda of the alleged contract which might be sufficient to satisfy the statute of frauds if a contract is established and if the time for performance of such contract makes the statute of frauds otherwise applicable.
We find that Florida Power's assertion of a failure to exhaust administrative remedies does not apply in this action. *1228 Actually and essentially this is an action on a contract and not a claim that Florida Power failed to perform some duty placed by law on it as a public utility. The mere fact that the damages for breach of this particular contract may be measured by the amount the plaintiff had to pay as a rate and charge for underground services after January 15, 1975, does not mean that this controversy must be taken to the Florida Public Service Commission. While ordinarily a plaintiff who has an administrative remedy provided by statute must exhaust that remedy before a court will act to give the same remedy, Florida Welding and Erection Service, Inc. v. American Mutual Insurance Company, 285 So.2d 386 (Fla. 1973), a plaintiff is not required to pursue administrative remedies where they are not available and adequate. Cherry v. Bronson, 384 So.2d 169 (Fla. 5th DCA 1980). Therefore, where, as here, a plaintiff seeks money damages for breach of contract, which an administrative body is not empowered to award, the administrative remedy is not considered adequate and the plaintiff is not bound to exhaust it before seeking relief in court. Southern Bell Tel. and Tel. Co. v. Mobile America Corp., Inc., 291 So.2d 199 (Fla. 1974); Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla. 3d DCA), cert. denied, 116 So.2d 772 (Fla. 1959); Miami v. Fraternal Order of Police, 378 So.2d 20, 24 n. 8 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1113 (Fla. 1980). Since the Public Service Commission is not authorized to award money damages, Winter Springs was not bound to seek an administrative remedy for the dispute and thus the doctrine of exhaustion of administrative remedies has no application in this case. See Southern Bell Tel. and Tel. Co. v. Mobile America Corp., Inc. Compare Florida Power Corporation v. Advance Mobile Homes, Inc., 386 So.2d 897 (Fla. 5th DCA 1980), pet. denied, 394 So.2d 1151 (Fla. 1981), where this court perceived the actual dispute between the parties to be one relating only to rates and charges for services or installation under the Florida Administrative Code and therefore exclusively within the primary jurisdiction of the Florida Public Service Commission. In Advance Mobile Homes, rates and charges for services and installations, which were the subject of the dispute, were subject to the jurisdiction of the Florida Public Service Commission, both in 1973 when the parties first discussed underground electrical installations, and also in 1976 when the dispute between the parties matured. In this case there was no governmental limitation on the authority of Florida Power to enter into a contract to install underground service until the Florida Public Service Commission acted on January 15, 1975, and the dispute in this case relates only to matters occurring prior to that date.
For the same reason, the doctrine of "supervening governmental activity" does not apply in this case, because under the theory of its case Winter Springs will be entitled to recover damages only as to the underground service that Florida Power should have installed prior to the January 15, 1975, action of the Commission authorizing charges for underground service, which is the very act which Florida Power urges as being the "supervening governmental activity." It is likewise the time factor of this case that distinguishes it from H. Miller & Sons, Inc. v. Hawkins, 373 So.2d 913 (Fla. 1979). In Miller, the utility's obligation was limited by agreement to providing only plant capacity and it was not responsible for the installation of the service lines necessary to make the plant capacity available. Accordingly, the utility's contractual performance was necessarily keyed in time to the actual "time of connection" with each house. Consistently, Miller's incremental payments were tied to time or the completion of a certain number of homes. In Miller the developer argued only that since, before the rate increase, payment had been made for future connections, the increase should not be applied to homes built and connected after the rate increase. Therefore, in Miller there was no claim or issue that the utility breached a contract by not timely fulfilling contractual obligations.
In this case the alleged contract with Florida Power relates only to installation of service facilities and the central issue is *1229 whether there was a contract and, if so, whether and to what extent Florida Power should have performed its undertakings under the alleged contract prior to January 15, 1975.
The summary judgment in favor of appellee is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DAUKSCH, C.J., and SHARP, J., concur.
NOTES
[1] This was done, not by directing such cost differential be collected, but by providing that any such cost differential could not be charged to the general body of rate payers, thereby leaving the utility with the choice of having its stockholders pay the cost differential or imposing it upon subdivision developers. Fla. Admin. Code Rule 25-6.78(8) provides:

Nothing herein contained shall be construed to prevent any utility from assuming all cost differential of providing underground distribution systems, provided, however, that such assumed cost differential shall not be chargeable to the general body of rate payers, and any such policy adopted by a utility shall have uniform application throughout its service area.