667 So.2d 921 (1996)
SANDPIPER HOMEOWNERS ASSOCIATION, INC., Appellant,
v.
LAKE YALE CORP., etc., et al., Appellees.
No. 94-2441.
District Court of Appeal of Florida, Fifth District.
February 9, 1996.
Scott A. Gerken of Stone & Gerken, P.A., Eustis, for Appellant.
Paul R. Ezatoff and Daniel C. Brown and Brian M. Nugent of Katz, Kutter, Haigler, Alderman, Marks, Bryant & Yon, P.A., Tallahassee, for Appellees.
GOSHORN, Judge.
Sandpiper Homeowners Association, Inc. ("the Association") appeals from the order dismissing its complaint against Lake Yale Corporation ("Lake Yale") for lack of subject matter jurisdiction. We reverse.

THE FACTS
The Association consists of homeowners living in Sandpiper Mobile Home Manor, a mobile home park. The park obtains water for its residents from Lake Yale, a utility company owned by the park owner. Since the park's inception in 1967, the owner provided *922 residents with water and wastewater services for a fixed amount per month which was included in the monthly lot rental amount.[1] Following a dispute in 1990, the Association and Lake Yale entered into a settlement agreement that attached any increase in the lot rental amount to the consumer price index. That agreement states in pertinent part:
The base monthly lot rental amount for all lots in Sandpiper shall be subject to increases or decreases annually on January 1 of each of the years 1992, 1993 and 1994, in accordance with any increase or decrease as of September 1st in the Consumer Price Index, (CPI) U.S. Department of Labor (All urban Consumer XXXX-XXXX-XXX) as defined in the prospectus for Sandpiper. The lot rental amount shall not be subject to any other increases for the duration of the three year lease term....
In 1992, Lake Yale successfully applied to the St. Johns Water Management District ("SJWMD") for a new consumptive use permit which affected future water use within the park. The permit required that all homes in the park be equipped with individual water meters and that the homeowners be "charged for water such that the greater the volume used, the greater the rate per gallon." This is known as an "inverted rate."
Lake Yale then filed an application with the Florida Public Service Commission ("PSC") for water and wastewater certificates to approve a new rate structure which would implement the SJWMD's consumptive use permit. The application provided that the residents would pay the inverted rate rather than the agreed flat charge. The Association filed objections to Lake Yale's request, arguing that the proposed action violated the park prospectus and the settlement agreement between the Association and Lake Yale. In response, Lake Yale filed a motion to dismiss the Association's objections. The PSC dismissed the Association's objections, stating that:
Sandpiper's basis for its objection appears to be the existence of the prospectus. With respect to agreements between utilities and customers or other parties, contract disputes are matters which must be settled by the Circuit Court. The Commission has exclusive jurisdiction over utilities with regard to service, authority, and rates pursuant to Section 367.011, Florida Statutes.... (emphasis supplied).
Thereafter, Lake Yale installed meters on each resident's lot. It then delivered to residents a "Notice of Change of Rent Because of Reduction of Services." The letter explained that the SJWMD had directed that all homes in the park be metered, and therefore, the prospectus was now modified to reflect this mandate. Lake Yale stated that because the monthly lot rental amount would no longer include a charge for water and sewage service, it had unilaterally lowered the monthly rental amount by $20, which, it claimed, was the previous cost to Lake Yale for providing water to each home.
The Association filed a four-count complaint against Lake Yale. Count I alleged that Lake Yale had breached the lot rental agreement by refusing to sufficiently reduce the lot rental amount. Count II asserted breach of the settlement agreement in that Lake Yale increased the lot rental amount in direct violation of that agreement. In Count III, the Association sought a declaratory judgment as to the rights and duties of the parties under the prospectus and Florida's Mobile Home Act[2] in light of the PSC's actions. Finally, Count IV requested declaratory relief, and any other equitable remedies pursuant to section 723.033, Florida Statutes (1993).[3] Within the body of the *923 complaint and by separate motion, the Association also requested that the court enter a temporary injunction prohibiting Lake Yale from charging the new rates and instructing residents to place the $20 monthly rental decrease into the court registry pending the outcome of the litigation.
Lake Yale filed a motion to dismiss the Association's complaint, arguing that the trial court lacked subject matter jurisdiction because the question of the rates that should be charged for water and sewage services was a matter within PSC's exclusive jurisdiction pursuant to chapter 367 of the Florida Statutes. The court denied the Association's requested injunctive relief and the Association did not appeal that order. Thereafter, the trial court entered an order granting Lake Yale's motion to dismiss for lack of jurisdiction. It is from that order that this appeal follows.

THE LAW
The resolution of this issue requires consideration of the interplay of two chapters within the Florida Statutes. Chapter 367 was enacted to regulate utilities and chapter 723, termed the Florida Mobile Home Act, was enacted to regulate mobile home lot tenancies. Subsection 367.011(2), Florida Statutes (1993) grants the PSC "exclusive jurisdiction over each utility with respect to its authority, service, and rates," while section 723.0381 provides that disputes arising under the Florida Mobile Home Act may be filed in circuit court. Therefore, the trial court was faced with having to determine whether the circuit court was the appropriate forum to address a breach of contract complaint against a chapter 367 utility where the utility provided services within a mobile home park, as regulated by chapter 723. The court found that because the suit was against a chapter 367 utility and involved rates, the circuit court lacked subject matter jurisdiction over the dispute. We disagree and reverse.
The Association argues that the rights of mobile home owners set forth in the Florida Mobile Home Act are separate and distinct from those rights enumerated in chapter 367.
As such, it contends that the circuit court's power to adjudicate matters falling outside of chapter 367 does not interfere with the PSC's exclusive jurisdiction. Lake Yale responds that the effect of any relief awardable pursuant to the Association's complaint would be to circumvent the PSC's regulatory power. It claims that if the circuit court were permitted to adjust the rental amount to overcome the inverted rate structure, it would essentially be skirting the PSC's authority to create an incentive to conserve water.
In ruling that it lacked subject matter jurisdiction, the trial court relied primarily on two cases, State, Public Service Commission v. Lindahl, 613 So.2d 63 (Fla. 2d DCA 1993) and Cohee v. Crestridge Utilities Corp., 324 So.2d 155 (Fla. 2d DCA 1975). In Lindahl, utility customers who resided in the Shady Oaks mobile home park brought a class action suit against the utility provider who was also the developer of the park, seeking to enjoin it from billing and collecting newly approved rates for water and wastewater services. The residents asserted that the developer had breached "certain restrictions, covenants, and limitations ... running with the land" when the developer instituted a water rate increase that had been approved by the PSC. Id. at 63-64. Particularly, the residents relied upon certain restrictive covenants that provided as follows:
A yearly charge of $300.00, payable in advance, will be made for water, sewage, cable TV and Recreational Center including shuffleboard court.
Id. at 64. The circuit court entered an emergency temporary injunction, and the PSC appealed. The Second District phrased the issue on appeal as "whether the trial court was invested with subject matter jurisdiction to issue the injunction." Id. The court cited the PSC's exclusive jurisdiction pursuant to chapter 367 "to fix the rate that regulated utilities, such as Shady Oaks, charge their [sic] customers." Id. The court further stated, "The PSC's authority to raise or lower utility rates, even those established by a contract, is preemptive." Id. (citing Cohee v. Crestridge Utilities Corp., 324 So.2d 155 *924 (Fla. 2d DCA 1975)). However, the court concluded:
We recognize that our decision may affect the collection of the $300.00 annual maintenance fee prescribed in the deed restrictions. That concern, however, has no relevance to the narrow question we have answered in this opinion. On the other hand, we do not mean by our silence to sanction an assessment indistinguishable from the charges imposed for the services contemplated in the PSC approved rates.
Id.
Although the facts in Lindahl are remarkably similar to the instant situation, there are several key differences. In Lindahl, the sole issue on appeal was whether the trial court had subject matter jurisdiction to enjoin Shady Oaks from charging or attempting to collect the PSC imposed rates. It clearly does not under chapter 367. See § 367.011(2), Fla.Stat. (1993); Lindahl, 613 So.2d at 64. In the present case, the Association sought an injunction, which was denied, and it has not appealed that order. Thus, the Association does not dispute that the circuit court may not enjoin Lake Yale from imposing PSC-approved rates; rather, the Association is attempting to seek a forum in which to resolve whether Lake Yale's unilateral decision to decrease monthly lot rental by only $20 was reasonable.
Likewise, the Association has not asked the circuit court to address issues regarding the PSC's authority to raise or lower rates as discussed in Lindahl. It strictly desires to have a forum in which to resolve the contract dispute between itself and Lake Yale. Lindahl does not hold that the circuit court lacks jurisdiction to hear such matters. Cf. State ex rel. McKenzie v. Willis, 310 So.2d 1, 3 (Fla.1975) (stating that "[o]ur holding [that the controversies are resolvable by the PSC and are outside of the circuit court's jurisdiction]... is not intended to preclude exercise of jurisdiction by the [c]ircuit [c]ourts in different situations where the jurisdiction of the Commission does not lie or its jurisdiction could not provide [a] complete or adequate remedy.").
Furthermore, the Cohee decision does not hold that the circuit court lacks subject matter jurisdiction to determine whether a park owner, who is also a utility provider such as Lake Yale, breached its rental agreement with tenants. In Cohee, homeowners in a subdivision brought a class action suit against Crestridge, a utility corporation, which was founded by the developer and had been granted the exclusive right to provide utilities for the subdivision. The suit alleged that the corporation charged rates that exceeded those provided in the association's contract with the developer.[4] The lower court granted the utility corporation's motion for summary judgment because it found that the PSC had exclusive jurisdiction over the matter. The Second District recognized that the PSC "has authority to raise as well as lower rates established by a pre-existing contract when deemed necessary in the public interest." Cohee, 324 So.2d at 157 (citation omitted). However, the court stated that the question it must answer was "whether the trial court had jurisdiction to determine whether Crestridge breached its contract when it raised the rates." Id. at 158. Because the court was concerned that its opinion might affect the PSC's jurisdiction, it invited the PSC to file an amicus curiae brief. In doing so, the PSC admitted that, because any alleged breach would have occurred before its jurisdictional date, the PSC did not have jurisdiction. Accordingly, the Second District reversed, determining that the circuit court had jurisdiction to hear the matter:
The Plaintiffs are entitled to an adjudication of whether Crestridge breached its contract by going to the higher rates. This can only be accomplished in a court of law.
Id. (citation omitted).
Lake Yale asserts that Cohee stands for the proposition that, had the increase occurred after the PSC's jurisdictional date, *925 the PSC would have had exclusive jurisdiction over the breach of contract issue. However, the Second District in deciding Cohee did not make this extension. Such a conclusion is contrary to the PSC's position in both its February 1994 order and at the hearing on Lake Yale's motion to dismiss the Association's complaint.[5]See also Winter Springs Dev. Corp. v. Florida Power Corp., 402 So.2d 1225 (Fla. 5th DCA 1981) (stating that an administrative body is not empowered to award money damages for breach of contract). The Association does not dispute that the PSC had the authority to raise or lower rates previously established by contract when the public's interest warrants such action. Rather, it questions the amount by which Lake Yale unilaterally lowered its monthly lot rental.
Both parties also cite this court's decision, Winter Springs Development Corp. v. Florida Power Corp., 402 So.2d 1225 (Fla. 5th DCA 1981). In that case, Winter Springs Development brought suit against Florida Power, asserting that the parties had agreed in 1972 that Florida Power would install underground service at no cost in a subdivision Winter Springs was developing. Id. at 1227. Before 1974, the PSC had not required Florida Power to charge for underground installation, but that year, the PSC approved Florida Power's application to charge a differential for such installation, effective January 15, 1975. Id. Winter Springs' complaint alleged that Florida Power breached its agreement by failing to install part of the underground service before the January 15th cutoff date. In response, Florida Power claimed that the action was barred by the statute of frauds, that Winter Springs had failed to exhaust its administrative remedies with that body, that the doctrine of "supervening governmental activity" should apply, and that Winter Springs could not have entered into the alleged contract because it was not a corporate entity at that time.[6]
The court found that the developer need not exhaust its administrative remedies before seeking relief in circuit court. It continued:
Therefore, where, as here, a plaintiff seeks money damages for breach of contract, which an administrative body is not empowered to award, the administrative remedy is not considered adequate and the plaintiff is not bound to exhaust it before seeking relief in court. Since the Public Service Commission [PSC] is not authorized to award money damages, Winter Springs was not bound to seek an administrative remedy for the dispute and thus the doctrine of exhaustion of administrative remedies has no application to this case.
Id. at 1228 (citations omitted). Additionally, the Winter Springs court found that the "doctrine of supervening governmental activity" did not apply. It reasoned that Winter Springs would only be permitted to recover damages for underground service that Florida Power should have installed prior to January 15, 1975, the effective date of the PSC's action. The court therefore reversed summary judgment in favor of Florida Power and remanded the case to the lower court. Winter Springs, 402 So.2d at 1228-29.
Lake Yale contends that Winter Springs holds that the circuit court had subject matter jurisdiction only because the alleged *926 breach occurred before the PSC had approved the differential charges. The Association, on the other hand, distinguishes Winter Springs, pointing out that its dispute was not "one relating only to rates and charges for services or installation under the Florida Administrative Code and therefore exclusively with the primary jurisdiction of the Florida Public Service Commission." Id. at 1228. Instead, the Association challenges the park owner's failure to adequately reduce the lot rental amounts, not the rates set by the PSC.
We agree with the Association and hold that although the PSC has exclusive jurisdiction to entertain actions involving utilities with regard to authority, services, and rates, the circuit court is vested with jurisdiction to hear matters outside of that realm such as a mobile home park owner's breach of a prospectus and settlement agreement where, following a rate increase by the PSC, the park owner unilaterally determines the amount by which to adjust monthly rental costs. Such rental costs are not authority, services, or rates under chapter 367 and thus are within the circuit court's jurisdiction. We note that the trial court's concern that granting any relief would frustrate the PSC's conservation efforts and therefore, usurp its legislative authority can be resolved as long as the PSC's inverted rate structure remains intact.
REVERSED.
W. SHARP and GRIFFIN, JJ., concur.
NOTES
[1] This information is memorialized in the park prospectus that the owner provided to residents.
[2] See §§ 723.001-0861, Fla.Stat. (1993).
[3] That section states in relevant part:

(1) If the court, as a matter of law, finds a mobile home lot rental amount, rent increase, or change, or any provision of the rental agreement, to be unreasonable, the court may:
(a) Refuse to enforce the lot rental agreement.
(b) Refuse to enforce the rent increase or change.
(c) Enforce the remainder of the lot rental agreement without the unreasonable provision.
(d) Limit the application of the unreasonable provision so as to avoid any unreasonable result.
(e) Award a refund or a reduction in future rent payments.
§ 723.033(1), Fla.Stat. (1993).
[4] Like the entities in the present case, the developer and the utility corporation in Cohee were related in that "the same persons signed the contract [between the utility and the developer] as corporate officers of both parties." Cohee, 324 So.2d at 156. Sub judice, Lake Yale acted as both utility owner and park owner.
[5] That order stated:

Sandpiper's basis for its objection appears to be the existence of the prospectus. With respect to agreements between utilities and customers or other parties, contract disputes are matters which must be settled by the Circuit Court. The Commission has exclusive jurisdiction over utilities with regard to service, authority, and rates pursuant to Section 367.011, Florida Statutes....
Additionally, the attorney representing the PSC as amicus curiae explained at the hearing:
[T]he other thing I'd like to clarify for the Court is the difference between the rent issue and the rate issue. I think that the Commission would concede to the Court that we're [the PSC] not going to get involved with what the utility does with respect to rent, lowering it or raising it. As a matter of fact, that was one of the issues contemplated in the case before the Commission. We don't have the authority to tell a utility to raise or lower its rent.
* * * * * *
We don't look at rent, that's not under our discretion....
[6] Contrary to Lake Yale's assertion, Florida Power did not defend on the ground that the PSC was the appropriate forum. See Winter Springs, 402 So.2d at 1227.